## CHARLESTON

### TETER v. FRANKLIN FIRE INSURANCE CO.

### Submitted March 10, 1914.   Decided May 12, 1914.

1. INSURANCE—*Action on Fire Insurance Policy—Burden of Proof— Compliance With Conditions.*

In an action upon a fire insurance policy, containing conditions and warranties and an agreement not to sue until full compliance therewith, the burden is upon the insured to prove compliance or a

legal excuse for non-compliance, with all material conditions and warranties relied on in defendant's written specification of defenses. (p. 347).

2.  SAME—*Policy—Arbitration Clause—Statute.*

In view of the valued policy act a promissory warranty to arbitrate the loss is not material when the loss is total.    (p. 348)

3.  SAME—*Concurrent Insurance—Total Loss.*

If the ·loss is total the insurer's liability is not affected by the existence of concurrent insurance, within the limit permitted by the policy.    (p. 348·).

4.  SAME—*Concurrent Insurance—Rights of Insured.*

Where the loss is total, or where it is only partial but equal to, or greater than, the amount of all the insurance permitted and actually carried on the property, the insured is entitled to full indemnity if not at fault.    (p. 348).

5.  SAME—*"Total Loss"—What Constitutes.*

If the walls of a brick building, although standing, have been injured and caused to lean so much out of plumb, as a direct result of the fire which burned out a large portion of the floors and wood work within, that a prudent man would not use any portion of them as a basis for restoring the building, the loss is total.    (p. 349).

6.  SAME—*Construction—Additional Insurance.*

The following clause attached to a fire insurance policy is implied authority to carry additional insurance, viz.:    "Total insurance permitted is hereby limited to three-fourths of the cash value of the property hereby covered and to be concurrent herewith."    (p. 349).

7.  SAME—*Policy—Overestimate of Value.*

Such clause, in an open policy, is not violated by a slight over-estimate of value which may reasonably be accounted for by honest differences of opinion.    (p. 349).

8.  SAME—*Estoppel—Proof of Loss—Affidavit—Evidence.*

An affidavit, taken to furnish proof of loss, is admissible at the trial to show compliance with the condition of the policy, but is not evidence of the amount of loss, and the assured by making such an affidavit is not thereby estopped from showing that the loss therein stated was an under-estimation of his actual loss, or that what he at first thought was a partial loss later proved to be a total one.    (p. 350).

9.  SAME—*Policy—Breach of Warranty—Trust Deed.*

The existence of a trust deed upon the property insured does not constitute a breach of warranty of sole and unconditional owner-ship.    (p. 351).

10.  SAME—*Instructions—Evidence.*

Where the evidence is conflicting on the question of whether the loss is total or only partial, and, if partial, as to the actual amount of loss sustained, and the promissory warranty to arbitrate the loss, relied on as a defense, has not been complied with and no waiver or legal excuse for non-compliance is shown, it is prejudicial error to instruct the jury to find for the plaintiff the full amount of insurance if they should believe the loss either total, or partial but equaling or exceeding the amount of insurance permitted and actually carried, and to find for plaintiff and apportion the loss in case they find it to be less than the total insurance.  (p. 357).

11.  APPEAL AND ERROR—*Presentation for Review—Refusal of Instructions.*

This court will not reverse a judgment for the refusal to give an apparently good instruction, when the record does not appear to contain all the instructions given and does not show that the refusal to give such instruction was not justified on the ground that the point of the instruction was completely covered by some other instruction given but not brought up with the record.  (p. 352).

12.  SAME—*Presentation of Error—Presumption.*

Every reasonable presumption will be indulged in favor of the correctness of the rulings of the trial court, and error must affirmatively appear in order to warrant a reversal.  (p. 353).

Error to Circuit Court, Barbour County.

Action by Floyd Teter against the Franklin Fire Insurance Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Arthur S. Dayton,* and *Hartwell Cabell,* for plaintiff in error.

*W. T. George* and *W. B. & E. L. Maxwell,* for defendant in error.

WILLIAMS, JUDGE:

Defendant was awarded this writ of error to a judgment against it for the full amount of insurance, in an action upon a fire insurance policy covering a three story brick building in the town of Belington. Defendant insured the property to the amount of $2,000. Plaintiff held concurrent insurance aggregating $30,500, making the total amount of insurance $32,500. Defendant filed specifications relying upon a breach

of the following conditions and warranties contained in the policy, viz.: (1) To arbitrate the loss; (2) not to carry additional insurance without the consent of the insurer endorsed on, or added to, the policy; (3) that the insured was the sole and unconditional owner of the property; and (4) that, if the court should interpret the three-fourths value clause attached to the policy as authorizing concurrent insurance, then that condition was violated by taking additional insurance grossly in excess of the amount permitted which was limited to three-fourths of the cash value of the property. Plaintiff replied specially to each of the above enumerated defenses, and issues were joined.

Defendant admitted in its specification number one that the contracting parties could not agree on the amount of loss, and that an effort had been made to have it arbitrated in accordance with the terms of the policy, but that it miscarried because the arbitrator appointed by the plaintiff refused to agree upon an umpire, unless he could be permitted to name him, and that, at the instance of plaintiff, he refused to designate anyone as umpire who was not partial to plaintiff. Plaintiff replied by way of confession and avoidance, making like charges respecting the conduct of defendant and the appraiser selected by it. There is no proof to show which party, if either, was at fault in failing to select an umpire. The arbitrators may not have been influenced by the respective parties, and still have failed to agree. In that event others would likely have to be appointed in their places. But if the failure to agree upon an umpire had been shown to be due to the fraudulent conduct of the insurer, it would no doubt be estopped to set up a breach of the condition. 4 Cooley's Briefs on Insurance Law, 3626-3627. The fact is, that there was no agreement upon the amount of loss, and no arbitrament of it as provided in the policy. But the reason why there was not, does not appear. Full compliance with all the promissory warranties or conditions in the policy, is expressly made a condition precedent to the right of action on the policy, and the question with which we are confronted is: Whose duty was it to explain why this condition had not been performed? It was clearly the plaintiff's duty, as it was essential to his right of action. He stands upon a contract which says

he can not sue unless he has performed certain conditions, and, to maintain his action, he must show performance of the conditions, or a legal excuse for non-performance. The specification of defenses, relied on by defendant in an action on a fire insurance policy, is not in the nature of a plea in other actions, which avers affirmative matter that the pleader is required to prove. They are not pleadings at all, in the technical sense, but they are required by the statute to be filed as notice to the insured of what he is expected to prove. They are intended for the convenience of the assured, otherwise all conditions in the policy affecting the right of action would be raised by a plea to the general issue, and plaintiff would be put to proof of all of them. But proof of those not relied on in the written specifications is dispensed with by the statute. *Flanaghan* v. *Insurance Co.*, 42 W. Va. 426; and *Rosenthal Co.* v. *Insurance Co.*, 55 W. Va. 238. However, if the loss is total the valued policy statute, Ch. 33, Acts 1899, serial section 1394, Code 1913, renders adjustment of the loss unnecessary, and, in that view of the case, the arbitration clause is wholly immaterial, for the statute becomes a part of the insurance contract and avoids all parts of it not consistent with the statute. *Hinkle* v. *Insurance Co.*, 70 W. Va. 681. The evidence on the question of whether the loss is total, or only partial, is very conflicting; and in view of certain instructions given by the court, the jury may have rested their verdict upon either a partial or a total loss. But if the loss was only partial, then compliance with the agreement to arbitrate, or a legal excuse for non-compliance, was indispensable to plaintiff's right to maintain the action. Because it was a condition precedent, and is not affected by the valued policy statute except in case of a total loss. Neither is the insurer's liability affected by the existence of concurrent insurance within the limit allowed by the policy, if the loss is total. In such case each insurer is liable for the full amount of insurance he has written. This question has never before arisen in this court, but it has been held by the courts of other states having valued policy statutes similar to ours, that the statute applies as well where there is concurrent insurance as where there is none, and that, if the loss is total, each insurer is liable as if he were the only insurer. See *Havens* v. *Insurance*

*Co.,* 123 Mo. 403, 45 Am. St. Rep. 570; *Light Co.* v. *Insurance Co.,* 71 Wis. 454, 5 Am. St. Rep. 233.

Notwithstanding the four walls of the building are standing, and the metal roof is on it, still if the walls are so injured by the fire that a prudent man would not use any part of them as a basis of repairs, and they would have to be torn down and rebuilt, the loss would be total. *Insurance Co.* v. *Board of Education,* 49 W. Va. 360; 4 Cooley's Briefs on Insurance Law 3047; and 19 Cyc. 833. It matters not that portions of the material now in the building can be utilized in rebuilding. It was not the material composing the building that was insured, but the building itself, and "if its remnant can not be used as a basis of repair or restoration, the loss is total." *Hinkle* v. *Insurance Co., supra.* The jury had to determine from the evidence whether the loss was total or only partial.

The three-fourths value clause attached to the policy contained this clause: "Total insurance permitted is hereby limited to three-fourths of the cash value of the property hereby covered and to be concurrent herewith." This was implied consent to carry additional insurance, but limited the whole amount of insurance to three-fourths of the cash value of the building. 19 Cyc. 766; 2 Cooley's Briefs 1833; and *Palatine Ins. Co.* v. *Ewing,* 92 Fed. 111. The total insurance on the building, at the time of the fire, was $32,500, written by various companies. The evidence respecting the cash value of the building, just before the fire, is as conflicting as the evidence on the question of total loss, and both are jury questions. If the policy had limited the concurrent insurance to a definite sum of money instead of to an aliquot part of the unascertained value of the whole building, and plaintiff had held additional insurance in excess of that sum, there is no doubt that it would have been a violation of his promissory warranty and would have avoided his policy. 19 Cyc. 766; *Mitchell* v. *Insurance Co.,* 51 Pa. St. 402; *Royal Insurance Co.* v. *McCrea,* 8 Lea (Tenn.) 531, 41 Am. Rep. 656; *Allen* v. *Insurance Co.,* 123 N. Y. 6. But the policy is an open one, and the insured had to exercise his judgment in determining whether he was within limit. There is neither averment nor proof that he fraudulently over-insured, and it would be a

very harsh rule that would forfeit his policy, if the insured happened, innocently, to make a mistake in estimating the value of his property and should fix it at a little more than most other men should think it was actually worth. Men are prone to value their own possessions a little higher than other people would value them, and often do so in utmost good faith. The law allows a margin in such cases for honest differences of opinion. "A slight over-estimate of the value, which may reasonably be accounted for from differences of opinion, will not avoid the policy." 2 Cooley's Briefs 1320. The actual cash value of the property, according to the varying testimony, ranged all the way from $30,000 to $46,000. According to the above rule there may, or there may not, have been over-insurance, depending upon what the jury considered from the evidence the cash value to be, and whether insured intentionally exceeded the limit of insurance. But the over valuation would have to be so gross as to satisfy the jury that the insured intended to commit a fraud, before they would be justified in finding he had violated the promissory warranty relating to additional insurance. The supreme court of Iowa, in *O'Leary Brothers* v. *Insurance Co.*, 100 Iowa 390, held that: "A condition of a policy of insurance limiting the total insurance to three-fourths of the cash value of the property, is not a representation of warranty, and the policy is not avoided by innocently exceeding the limit." *Bohner* v. *Insurance Co.*, 127 Pa. St. 464, does not conflict with the above rule, for in that case it appeared from the insured's own testimony, that he knew he had violated the condition of his policy, and gave as his reason for taking the second policy that he thought the first had expired.

In his affidavit, furnishing proof of loss, plaintiff did not claim the loss was total, but that it amounted to $20,000. He has brought his suit, however, on the theory of a total loss, and explains in his testimony that, immediately after the fire, he thought portions of the walls could be used in making repairs, but that he later learned they could not and would have to be torn down and rebuilt. He also says he thought, at the time he furnished proof of loss, his damage amounted to more than $20,000, but that by fixing it at that amount, he could readily get an adjustment with the insurance companies. Proof of

loss is not evidence of loss, upon the trial of the case, but ·is admissible for the sole purpose· of showing that the condition of the policy respecting proof of loss has been complied with. *Tucker* v. *Fire Insurance Co.,* 58 W. Va. 30, 51 S. E. 86, (Syl. pt. 13). In the absence of fraud, and none is here charged, plaintiff was not precluded from showing that his loss, even if only partial, was much greater than he had at first supposed; or, that what he at first thought was only a partial loss turned out.to be a total loss. *Bentley* v. *Insurance Co.,* 40 W. Va. 729, (Syl. pt. 10).

The trust deed upon the property to T. S. Riley, trustee, is not a breach of the warranty that plaintiff is the sole and unconditional owner. The loss payable clause of the policy was expressly made for the benefit of said trustee. This point, however, is not urged in brief of counsel for plaintiff in error. It would not have constituted a breach, ·even if the existence of the trust deed had not been disclosed. It was only an encumbrance, and plaintiff did not warrant against encumbrances. *Quarrier* v. *Peabody Insurance Co.,* 10 W. Va. 507, and *Wolpert* v. *Northern Assurance Co.,* 44 W. Va. 734.

The court instructed the jury, at the request of plaintiff, that he was entitled to recover the full amount of insurance, if they were satisfied from the evidence that the loss was total, or, if not total, that it was equal to, or greater than, the total amount of insurance, provided they were further satisfied that the entire insurance did not exceed three-fourths the cash value of the property. On the state of the proof disclosed by the record, plaintiff could recover only in case the loss was total, and if the ·jury did not believe the evidence proved a total loss, they could not find for plaintiff, because he had not shown a waiver of the arbitration clause, or excused his non-compliance with it. For this reason it was error to give plaintiff's instructions Nos. 2 and 7, and, being unable to determine from the record whether the jury's verdict rests on a finding that the loss was total or only partial, we must assume that defendant was prejudiced by the giving of those instructions. In other respects they correctly state the law. Plaintiff would have been entitled to full indemnity, if he had shown ·compliance with all his promissory warranties, set

up as defenses, or if he had shown a legal excuse for his failure to comply with them.

Plaintiff's 8th instruction correctly told the jury that, if they believed from the evidence the plaintiff's loss was total, the three-fourths value clause attached to the policy did not limit defendant's liability. This question we have already discussed. *Hinkle* v. *Insurance Co., supra.*

It was proper to refuse defendant's instruction No. 1, because it would have told the jury to find for defendant in any event. It disregarded the evidence relating to a total loss. It should have had some such qualification as, "unless they find the loss was total."

Defendant's instructions Nos. 8 and 13 are bad, and were properly refused, because they make no allowance for honest differences of opinion as to the cash value of the property. The special interrogatory which defendant desired to have submitted to the jury was properly refused for the same reason.

Defendant's instructions Nos. 9 and 10 are bad for the reason that they would have denied recovery of damage to the building, necessarily resulting from the action of the fire, although not discoverable immediately thereafter. Nos. 11 and 17 would have been confusing and misleading and were, therefore, properly refused. The jury may have concluded from the evidence that it would cost as much as the amount of insurance, to restore the building, and, in that event, plaintiff was entitled to full indemnity, if entitled to anything at all.

Defendant's instruction No. 14 correctly defined a total loss, and should have been given. But the record does not show that it contains all the instructions that were given, and the court may have refused to give this instruction on the ground that the question was covered by some other instruction which was given but which does not appear in the record. Therefore, out of deference to the trial court, we must presume that he refused to give it for that reason. If this were the only alleged error we would not reverse the judgment, because we could not say the court erred in refusing even a good instruction when he may have been justified in doing so. A party seeking reversal for the refusal of an instruction must show, by the record, that there was no justification for refusing to

give it, else error does not affirmatively appear. This he may do either by bringing up all the instructions, or by having the court certify that the point was not covered by any other instruction given. Every reasonable presumption must be indulged in favor of the correctness of the rulings of the trial court. *Ohio Valley Bending Co.* v. *Pickens et al.,* decided at the present term.

For the reasons herein given we reverse the judgment, set aside the verdict and remand the case for a new trial.

*Reversed and Remanded.*