Syllabus.

# Wytheville.

## CHARLES D. HARRIS v. COMMONWEALTH.

### June 15, 1922.

1. LARCENY—*New Trial—Evidence Held Sufficient to Sustain Verdict—Case at Bar.*—In the instant case, a prosecution for larceny, accused entered the lobby of a bank with a companion. The companion of accused was seen to take a package of money from a teller's cage, and turning to leave, he touched accused and said in an undertone, "Everything is all right," and the two walked out of the bank together. Upon being pointed out to an employee of the bank by a customer, both men fled. When accused was caught he claimed that he had no money, and upon being questioned as to what he did with it, he replied, "I dropped it."

   *Held:* That this evidence, together with the inconsistent testimony of accused and his own guilty conduct, was ample to satisfy the jury beyond a reasonable doubt that the accused and his companion were partners in the crime, and that accused was present and acted jointly with his companion while the crime was being committed.

2. APPEAL AND ERROR—*Presumption in Favor of Rulings of Trial Court.*—The rulings of the trial court are presumed to be correct, unless the contrary appears from the record.

3. APPEAL AND ERROR—*Instructions—Record—All Instructions Should be Certified.*—Where all the instructions are not certified, it cannot be said that the refusal of the court to give a certain instruction is reversible error, because the instruction in question may have been covered by some other instruction that was given.

4. APPEAL AND ERROR—*Instructions—Record—All Instructions Should be Certified.*—The rule is that the record should show in terms, or by clear inference, that the instructions found in the record are all the instructions that were given by the trial court. The party asking a reversal for refusal to give an instruction must show by the record that there was no justification for refusing to give it, which he may do by bringing up all the instructions, or by having the court certify that the point was not covered by any other instruction.

5. APPEAL AND ERROR—*Instructions—Record—All Instructions Should be Certified.*—Before it can be properly held that the giving of an instruction complained of constituted reversible error, in a case where all the instructions were not certified, it would have to appear that the instruction in itself was vitally wrong and that the other instructions could not have cured the error.

6. ARGUMENTS OF COUNSEL—*Argument of Commonwealth's Attorney— New Trial—General Rule.*—A new trial will be granted when it plainly appears that the statement of the Commonwealth's attorney complained of was highly prejudicial to the accused and that the · trial court refused to instruct the jury to disregard it.

7. ARGUMENTS OF COUNSEL—*New Trial—Instruction to Disregard Statement of Counsel.*—But improper argument by the Commonwealth's attorney is not a ground for a new trial where it appears that the lower court sustained an objection to the statements of the Commonwealth's attorney and instructed the jury to disregard them. Jurors are supposed to be competent to understand and willing to obey the instructions of the court as to what they shall and shall not consider in determining their verdict, and, as a rule, the withdrawal of the objectionable remarks by the prosecuting attorney, or by the court, or by a direction of the court, is deemed to have removed the prejudice and removed the error, so that a reversal cannot be had therefor.

8. ARGUMENTS OF COUNSEL—*Argument of Commonwealth's Attorney— Improper Argument Not Necessarily Ground for Reversal—Discretion of Trial Court.*—Though improper language of counsel for the prosecution in argument, or otherwise, in a criminal case, has been objected to and ruled upon adversely to the defendant, and though an exception has been taken to the language, it is not necessarily a ground for reversal. The conduct of the trial being a matter resting in the sound discretion of the trial court, that discretion will not be interfered with, except in a case of manifest abuse, prejudicial to the accused. If every improper remark of counsel were ground for reversal, comparatively few verdicts would stand. Appellate courts, therefore, hesitate to interfere by granting a new trial, except where the prosecuting attorney has so clearly departed from the line of legitimate procedure *that any reasonable person will conclude that the jury were certainly prejudiced thereby.*

9. ARGUMENTS OF COUNSEL—*Duty of Commonwealth's Attorney.*—Every person accused of crime, whether guilty or innocent, is entitled to have all his legal rights protected during his trial. And in a criminal case, the Commonwealth's attorney, as the representative of the people, should guard against any violation of his rights in this respect.

10. ARGUMENTS OF COUNSEL—*Commonwealth's Attorney—Case at Bar.*— In the instant case, it was clear that some of the remarks and questions of the attorney for the Commonwealth were improper and calculated to prejudice the accused in the estimation of the jury; but it appeared, in nearly every instance, that the objectionable remarks were withdrawn by him, or by direction of the court.

*Held:* That the conduct of the Commonwealth's attorney did not constitute reversible error.

Error to a judgment of the Corporation Court of the city of Norfolk.

*Affirmed.*

The opinion states the case.

*Page, Page & Page* and *N. T. Green,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

[1] The plaintiff in error, Charles D. Harris, was convicted under an indictment charging him with stealing six hundred and fifty-five dollars from the Seaboard National Bank of Norfolk, Virginia, and sentenced to serve a term of five years in the penitentiary. The case is here upon a writ of error to that judgment.

On July 18, 1921, the plaintiff in error, Charles D. Harris, and a small man, who was bareheaded and in his shirt sleeves, entered the lobby of the Seaboard National Bank, where a large number of the patrons of the bank were being waited on by its employees. When T. W. Morse, one of the paying tellers, left his cage to get some change for a customer, H. F. Atkinson, the small man, who was standing near by, walked up to the side window of the paying teller's cage and put his hand through, under the gratework of the window, and took several packages of money which contained $655, and turning to leave, touched the plaintiff in error, who was standing with his back to the cage and about five feet from the window, and said, in an undertone, "everything is all right," and the two walked out of the bank together. H. F. Atkinson saw the small man pull his cap from his

pocket, which aroused his suspicion.   He then called
R. P. Wingfield, an employee of the bank, and told
him what had occurred, and they followed the two
men, losing sight of them as they left the front door of
the bank until they reached the corner of Fayette street,
a distance of about thirty feet, when they saw the
two men, about forty-five feet down Fayette street,
walking towards Water street, and exchanging some-
thing.   Atkinson, pointing to the small man, asked
Wingfield if that man worked at the bank, to which
he replied, "No."   Just as Atkinson raised his hand
to point them out, one of them looked back and
immediately both men ran, and Wingfield chased them
down Fayette street into Water street, where they ran
among some box cars and were lost sight of for a few
minutes, the small man going towards the wharf and
making his escape, and the accused running through
the store of Hurst & Son and hiding behind two spools
of wire at a junk pile.   A few minutes later the accused
left the junk pile, leaving his hat behind, and, to elude
his pursuers, climbed a telegraph pole and went
through an open window on the second floor of a store
building, and then downstairs into a lane and back
towards the water front, where he was caught by W.
M. Fuller; whereupon he exclaimed: "Turn me loose,
turn me loose.   I ain't got no money."   And to Fuller's
question, "What did you do with it?" he replied, "I
dropped it."   When Fuller first saw him he had a
package in one hand and his hat in the other.

The foregoing facts were testified to by the witnesses
for the Commonwealth; while the prisoner, the only
witness sworn in his behalf, testified as follows:   He
arrived in Norfolk from Philadelphia that morning at
10 o'clock; that he was a bricklayer by trade, and had
some tools which he had left in a cigar store, but he

could not tell where the cigar store was; that he got something to eat and walked around looking for work, and when he reached Fayette street two gentlemen (Wingfield and Atkinson) came running out and said: "There they go now, catch him;" that accused started running and chased the two men pointed out by Wingfield and Atkinson. Accused further testified that he chased the larger of the two men down the street towards the river, up the river and around and through a scrap iron pile, and then came up another street and went through a building; that about twenty-five men came running down the alley and holloed: "That is him, catch him," and because he was a stranger he ran and climbed a telegraph pole and went through a window into a building and down stairs, and was caught by a colored man. He denied that he was ever in the Seaboard Bank.

Wingfield and Atkinson denied the statement of the accused that the accused started in pursuit of the two men on Fayette street with Wingfield.

The first assignment of error is to the refusal of the court to set aside the verdict of the jury and grant a new trial on the ground that the verdict is contrary to the law and the evidence.

It is manifest that the foregoing evidence of the Commonwealth, considered along with the testimony of the accused, with all of its inconsistencies, and his own guilty conduct, was ample to satisfy the jury beyond a reasonable doubt that the accused and the "small man," referred to in the evidence, were partners in the crime, that the accused was present and acting jointly with the "small man"—standing by and watching—while the crime was being committed, and received his share of the money.

There is no merit in this assignment of error.

Four assignments of error relate to the action of the court in refusing to give a certain instruction asked for by the plaintiff in error, and the giving of three certain instructions over his objection.

[2-4] The Attorney-General's brief states that all the instructions given by the court do not appear in the record, and this is not denied by counsel for the accused. The ruling of the trial court are presumed to be correct, unless the contrary appears from the record. The rule is that the record should show in terms, or by clear inference, that the instructions found in the record are all the instructions that were given by the trial court, and the record in the instant case does not meet this requirement. The court may have refused to give the instruction in question on the ground that the same was covered by some other instruction that was given, but which does not appear in the record. The party asking a reversal for refusal to give an instruction must show by the record that there was no justification for refusing to give it, which he may do by bringing up all the instructions, or by having the court certify that the point was not covered by any other instruction. *Teter* v. *Ins. Co.*, 74 W. Va., 344, 82 S. E. 40.

[5] The error complained of in the instructions granted may have been cured by other instructions which were given. In any event, the rule of this court is that before we could properly hold that the giving of the instructions complained of constituted reversible error, in a case where all the instructions were not certified, it would have to appear that the instruction in itself was vitally wrong and that the other instructions could not have cured the error. *Lysle Milling Co.* v. *Hold & Co.*, 122 Va. 573, 95 S. E. 414.

We see nothing in the instructions given to indicate

that the errors complained of, if errors they were, could not have been cured in the manner suggested, and decline to review the rulings of the court refusing or granting instructions.

The remaining assignments of error relate to the action of the Commonwealth's attorney in making certain remarks and asking certain questions during the progress of the trial, as follows:

1. He asked the accused on cross-examination: "Is it not a fact that you belong to an association of bank robbers?" The prisoner's counsel objected and the attorney for the Commonwealth asked him, "Do you object to my going into his record?" and then withdrew his question. Whereupon the court instructed the jury to disregard it.

2. The Commonwealth's attorney said to the prisoner: "I am going to put you on your guard, that you were present and called one of these men away, when Mr. Hurst was present;" this statement being made after the Commonwealth's attorney had asked the accused, "Did you see Mr. Hurst in jail in conversation with Ernest P. Graham and B. W. Ennis the day he was there before your trial in the police court?" and to which the accused had answered, "No, sir, I didn't." The court thereupon instructed the jury to disregard any remarks of counsel, and to pay attention to the evidence which comes to them under the sanction of an oath, adding that the mere fact that the witness was put on his guard is not to be accepted by the jury as proving anything, one way or the other, until evidence is brought forward to that effect.

3. The Commonwealth's attorney asked the accused: "When was the first time you ever took up your permanent abode in the country?" and remarked, "You are showing pretty well that you are a city boy

now, and a very smart one." The accused replied, "I live in the country now."

4.   The Commonwealth's attorney asked Ernest P. Graham the following question: "State whether or not Chas. D. Harris, the defendant here, asked you to arrange, in consideration of the payment to you of $1,000, to have a colored man by the name of Wm. Fuller fail to identify him as the man he saw running with the package in his hand, on July 18, 1921, and in further consideration of which he, Chas. D. Harris, was to pay Fuller $50, and was to return to the Seaboard National Bank $655, alleged to have been stolen?" The Commonwealth's attorney also asked witness, Graham, if Harris made such a proposition to him, and he replied, "No, sir." The court thereupon instructed the jury to disregard this matter, as it was not satisfactorily shown that anything done by Graham was at the instance of the accused.

[6] A new trial will be granted when it plainly appears that the statement of the Commonwealth's attorney complained of was highly prejudicial to the accused and that the trial court refused to instruct the jury to disregard it.   *Jesse's Case,* 112 Va. 887, 71 S. E. 612.

[7] In *Mullins' Case,* 113 Va. 792, 75 S. E. 193, and in *McCoy's Case,* 125 Va. 778, 99 S. E. 644, this court granted new trials because of improper arguments by the attorney for the Commonwealth, which the trial court permitted, over protest of the prisoner's counsel, and without instructing the jury to disregard them. But we recall no case where a new trial has been granted for similar misconduct, when it appeared that the lower court sustained the objection of the prisoner and instructed the jury to disregard the statements of the prosecuting attorney.

Jurors are supposed to be competent to understand

and willing to obey the instructions of the court as to what they shall and shall not consider in determining their verdict, and as a rule the withdrawal of the objectionable remarks by the prosecuting attorney, or by the court, or by a direction of the court, is deemed to have removed the prejudice and removed the error, so that a reversal cannot be had therefor.    46 L. R. A. 648.

. [8, 9] Though improper language of counsel for the prosecution in argument, or otherwise, in a criminal case, has been objected to and ruled upon adversely to the defendant, and though an exception has been taken to the language, it is not necessarily a ground for reversal.    The conduct of the trial being a matter resting in the sound discretion of the trial court, that discretion will not be interfered with, except in a case of manifest abuse, prejudicial to the accused.    *Inman* v. *State*, 72 Ga. 269; *Combs* v. *State*, 75 Ind. 221; *Ford* v. *State*, 34 Ark. 649; *People* v. *Van Zile*, 73 Hun. (N. Y.) 534, 26 N. Y. Supp. 390; *State* v. *Surles*, 117 N. C. 720, 23 S. E. 324.

Every person accused of crime, whether guilty or innocent, is entitled to have all his legal rights protected during his trial.    And in a criminal case, the Commonwealth's attorney, as the representative of the people, should guard against any violation of his rights in this respect.    But if every improper remark of counsel were ground for reversal, comparatively few verdicts would stand, since the most eminent counsel are sometimes led into such inadvertencies.    Appellate courts, therefore, hesitate to interfere by granting a new trial, except where the prosecuting attorney has so clearly departed from the line of legitimate procedure *that any reasonable person will conclude that the jury were certainly prejudiced thereby.*

[10] In the instant case, it is clear that some of the

remarks and questions of the attorney for the Commonwealth were improper and calculated to prejudice the accused in the estimation of the jury; but it appearing, in nearly every instance, that the objectionable remarks were withdrawn by him, or by direction of the court, we cannot hold that such conduct on the part of the attorney for the Commonwealth, under the evidence, constitutes reversible error.

The judgment complained of will be affirmed.

*Affirmed.*