# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## I. C. TRIPLETT, TRADING AS TRIPLETT LUMBER COMPANY, v. W. S. NICHOLS.

### June 12, 1924.

1. APPEAL AND ERROR—*Error in Instructions—Record Should Show that it Contains all of the Instructions.*—Where error is alleged in an instruction the rule is that the record should show in terms or by clear inference that the instructions found in the record are all of the instructions that were given by the court so that it may be seen that the alleged defect in the instructions was not cured by some other instructions which may have b en given but which do not appear in the record.

2. APPEAL AND ERROR—*Error in Instructions—Record Should Show that it Contains all of the Instructions—Case at Bar.*—In the instant case the bill of exceptions certifies that "the following instructions were given by the court." The bill of exceptions thereupon sets out instructions 1 and 2 and certifies that the defendant by counsel "objected to instruction No. 2, which was given by the court," etc. There was no reason for including instruction No. 1 in the bill, as it was not objected to, unless it was because all of the instructions given were included in the bill.

   *Held:* That it appeared from the record by clear inference that instructions Nos. 1 and 2 found in the record were all of the instructions given.

3. SALES—*Breach of Contract by Seller—Measure of Damages where there has been a Resale by Buyer and the Buyer has to Substitute Another Article for that Purchased—Where there is no Market.*—Where a seller is informed at the time of the contract of sale of goods that the goods are for shipment to another, and the seller breaches the contract by failing to deliver the goods specified within the time stipulated in the contract, and the buyer substitutes for the goods embraced in the contract other articles, the nearest in price and quality which he can, by reasonable diligence, obtain at the time of the breach, and, where the case is one of resale, obtains no greater price for the substituted goods than the contract price, the measure of damages which the buyer is entitled to recover is the difference between what he pays for the substituted articles and the contract price for the

goods provided there was no available market at the time of the breach in which the goods contracted for could, by the exercise of reasonable diligence on his part, have been then obtained at a price substantially less than that paid.

4. SALES—*Breach of Contract by Seller—Measure of Damages where there has been a Resale by Buyer and the Buyer has to Substitute Another Article for that Purchased—Where there is a Market.*—In case of a breach of contract by seller and the buyer has resold the subject of the sale it is the duty of the buyer to use reasonable diligence to minimize his damages arising from the breach. He cannot arbitrarily substitute for the goods contracted for any goods he may choose. If, at the time of the breach of the contract, there is a market from which he can, by reasonable diligence, obtain the goods contracted for, the measure of his damages for the breach of the contract is the difference between the contract price and the market price of the goods in such market at the time of the breach, plus any additional expense of freight, etc., not the price actually paid· for substituted articles.

5. SALES—*Breach of Contract by Seller—Measure of Damages where there is a Market—Conflicts in the Evidence for the Jury—Case at Bar.*—In the instant case an action for breach of contract of sale by the seller, where the buyer had resold the subject of the sale and substituted other articles for the goods purchased, there was evidence tending to show that there was a market from which the buyer could have obtained the goods contracted for. There was other evidence directly in conflict with this. But the finding of the fact of whether or not there was such a market in issue from the conflict in the testimony was a subject solely within the providence of the jury and if the instructions in the case had the effect of withdrawing that subject from the jury it was reversible error.

6. SALES—*Breach of Contract by Seller—Measure of Damages where there is a Market—Instructions—Case at Bar.*—In the instant case an action for breach of contract of sale by the seller, where the buyer had resold the subject of the sale and substituted other articles for the goods purchased, an instruction that the measure of damages was the difference between the contract price and the price paid by defendant for the substitutes was erroneous in that it failed to set out the qualification that this was the rule only where there was no market in which the buyer might have obtained by the exercise of reasonable diligence the articles contracted for and this omission was not cured by another instruction which dealt in such general terms with the qualification that it set up no standard and furnished no guide to the jury by which they were to ascertain whether the buyer did exercise the reasonable diligence mentioned.

7. INSTRUCTIONS—*Party's Theory of the Case—Evidence to Support—Breach of Contract of Sale—Case at Bar.*—In an action for breach of contract of sale by the seller, where the buyer bought substitutes for the articles contracted for, defendant was entitled to have instructions given to jury presenting defendant's theory of the case that there was a market in which plaintiff might have obtained the substitutes at a lower price than he actually paid, there being evidence tending to support this theory.

8. SALES—*Breach of Contract of Sale—Breach of Contract of Sale by Seller—Evidence of Purpose for which Buyer was going to Use the Subject of the Sale.*—In an action for breach of contract by the seller of timbers an exception was taken to the action of the trial court in allowing a witness for the plaintiff to testify as to the purpose for which the plaintiff was going to use the timbers in question. It appeared on the face of the contract that the timbers were bought for shipment to a third person.

*Held:* That this was sufficient, along with the other circumstances in evidence, to make the doctrine on the subject of the measure of damages where the buyer has resold and on breach of contract supplies substitutes applicable so that it was immaterial whether the purpose for which the plaintiff was going to use the timbers did or did not further specifically appear in evidence.

Error to a judgment of the Circuit Court of the city of Lynchburg, in a proceeding by attachment. Judgment for plaintiff. Defendant assigns error.

*Reversed and a new trial awarded the defendant.*

This is a proceeding by attachment, instituted by the defendant in error, W. S. Nichols (hereinafter called plaintiff, or plaintiff buyer), against the plaintiff in error, I. C. Triplett, trading as Triplett Lumber Company (hereinafter called defendant, or defendant seller), in which the plaintiff buyer seeks to recover of the defendant seller damages for breach of the contract of the latter to ship to a third person named in the contract, to whom the plaintiff buyer resold the same, "twenty-four pieces 8 x 16–32 * * of sound square edge, long-leaf, yellow pine" lumber, within the time stipu-

lated in the contract (which expired on August 23, 1919), the difference between what the plaintiff paid for the same number of substituted steel pieces of the same dimensions and the contract price; the price paid for the steel pieces ($1,509.10 plus freight charges of $75.85) being much in excess of the contract price (to-wit, $466.94), agreed to be paid for the pieces of lumber or timbers sold.

There was a verdict and judgment for the plaintiff.

There was a direct conflict in the testimony for the plaintiff and that for the defendant on the question of whether there was a market at the time of the breach of the contract, to-wit, August 23, 1919, dealing in the same character and dimensions of lumber, or timbers, embraced in the contract, by resort to which the plaintiff could have, at that time, bought and obtained as prompt delivery of such articles as was obtained of the substituted steel pieces, at a price substantially less than that paid for the steel pieces.

The testimony for the plaintiff on this subject was to the effect that there was no such market dealing in the specific timbers contracted for.    That for that reason the party to whom the plaintiff had resold such timbers bought, on August 25, 1919, the steel pieces aforesaid at the excess price in question, to be shipped, and which were shipped, from Richmond, Va., on August 27, 1919, two days afterwards, to Winston-Salem, N. C., the contract place of delivery.    The evidence is silent as to how long this shipment was in transit, or as to what was the usual or reasonable time for such a shipment to consume in transit.

The testimony for the defendant on the subject just mentioned was to the effect that there was such market, dealing in the specific timbers contracted for, and that if the plaintiff had availed himself of such market, as he

might have done, he could, at the time of the aforesaid breach of the contract, have bought and obtained delivery of the timbers contracted for as promptly as delivery of the substituted steel pieces was obtained, at a price greatly less than that paid for the steel pieces.

The testimony of a witness for the defendant on this subject was, in part, as follows: "*  *  that he is the president of the Hickson Lumber Company of Lynchburg, Virginia, and has been in the lumber business for many years. That his company  *  *  has lumber mills in South Carolina. That he was in the lumber business as stated during the year 1919. That the timbers which are the subject of litigation in this suit, namely, 8 x 12–32, long-leaf yellow pine, are regular standard sizes and are furnished all the time by lumber mills handling long-leaf yellow pine. That during the summer of 1919 these timbers could have undoubtedly been procured from any number of mills. That in June, 1919, the price of $57.00 per thousand for these timbers delivered at Winston-Salem, N. C." (the contract price and place of delivery in the instant case), "was the fair market price. That in August and September, 1919, the market advanced a little and the price during those months would have been from $60.00 to $65.00. That  *  *  there were plenty of planing mills at that time that would have shipped them in twenty-four hours, provided they were paid a bonus. That he does not know of any particular mill that would have shipped them in twenty-four hours, nor does he know of his own knowledge that any mill could have shipped them, but he has no doubt many of them would have shipped them within that time if they were offered as much as $100.00 per thousand.  *  *  *."

The evidence was to the effect that the timbers in question aggregated 8,192 feet.

The evidence was to the further effect that the plain-
tiff received for the steel pieces from the person to whom
he sold them only the contract price stipulated for the
aforesaid timbers.

The following bill of exceptions appears in the record
duly signed by the trial judge:

### "Bill of Exceptions No. 3.

"The following instructions were given by the court:

" '1. The court instructs the jury that it is the duty
of the buyer, in case of a breach by the seller, to exercise
reasonable diligence in endeavoring to obtain the goods
elsewhere and do all that can reasonably be expected to
mitigate the loss, and act throughout as a reasonable
man of business.'

" '2. The court instructs the jury that if they be-
lieve from the evidence that at the time plaintiff and de-
fendant entered into the contract for the delivery of
twenty-four pieces of long-leaf pine lumber 8 x 16 x 32,
the defendant knew that they were being purchased to
enable the plaintiff to fulfill a subcontract, and the de-
fendant did not furnish said timbers as provided in the
contract, then the plaintiff was not required to supply
his needs with the same sort of timber, nor was he re-
quired to use wood at all, but he could go into the mar-
ket and purchase the best substitute obtainable; and if
the jury believe that the iron bought by the plaintiff
was the best substitute obtainable then they should find
for the plaintiff; and the court further instructs the jury
that the measure of damage in such case is the differ-
ence between the contract price and the price paid by
the said defendant for the substitute as before men-
tioned and freight on same.'

"The following instructions were requested by the defendant but were refused:

" 'A. The court instructs the jury that where, in case of nondelivery or delay in delivery of goods agreed to be sold, it is practicable for the purchaser to obtain such goods elsewhere to take the place of those due from the seller, it is his duty to do so as expeditiously and cheaply as he reasonably can, and hold the seller responsible, if he was at fault, for the excess of cost over the contract price, and such reasonable expense and loss as are necessarily incurred in procuring them; and it is no excuse that there are no such goods for sale at the place of delivery, if by making effort in a reasonable and businesslike way, he can obtain them on reasonable terms elsewhere.'

" 'B. The court instructs the jury that in a suit of this character, for breach of contract for failure to deliver goods of a stated quality sold at a specified price, the general rule is that the measure of damages is the difference between the contract price and the market price at the time and place fixed for delivery. If there is no market at the place of delivery at the time fixed therefor, resort may be had to the nearest available market, with cost of transportation to the place of delivery added.'

"The defendant, by counsel, objected to instruction No. 2, which was given by the court, but the court overruled the defendant's objection and gave the said instruction. The defendant also excepted to the action of the court in refusing to give the two instructions above, asked for by the defendant."

*Edmunds & Hamner*, for the plaintiff in error.

*Kemp, Barksdale & Abbot*, for the defendant in error.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

Among the assignments of error are the following:

"That the court erred in giving instruction No. 2 * *; (and)

"That the court erred in refusing to give instructions A and B, asked for by the defendant."

The instructions mentioned appear in the bill of exceptions copied above.

[1] Before considering the questions presented by these assignments of error, however, it will be necessary for us to dispose of a question raised by counsel for the plaintiff in oral argument, which is as follows:

1. Does the bill of exceptions in the record concerning the instructions show that all of the instructions given are included therein, making it appear from the record that the alleged defect in instruction No. 2 was not cured by some other instruction which may have been given, which does not appear in the record, so as to enable the appellate court; under the established rule of procedure on the subject, to consider the alleged defect in instruction No. 2, given by the trial court?

The question must be answered in the affirmative.

We have dealt with this question a number of times and very recently in *Harris' Case,* 133 Va. 700, 112 S. E. 753, and in *Parker's Case,* 135 Va. 625, 115 S. E. 566.

As stated in *Harris' Case;* "The rule is that the record should show in terms, or by clear inference, that the instructions found in the record are all the instructions given by the trial court."

In *Parker's Case,* we held that where the certificate is that "the following instructions were offered    *    *," and the certificate thereupon sets out certain instructions, such a certificate shows, by clear inference, all of the instructions which were offered.

[2] In the instant case the bill of exceptions certifies that "the following instructions were given by the court." The bill of exceptions thereupon sets out instructions 1 and 2 and certifies that the defendant by counsel "objected to instruction No. 2, which was given by the court," etc. There was no reason for including instruction No. 1 in the bill, as it was not objected to, unless it was because all of the instructions given were included in the bill. We think, therefore, that it appears from the record, by clear inference, that the instructions No. 1 and No. 2 found in the record are all of the instructions which were given in the instant case.

Coming now to the consideration of the assignments of error above mentioned, it is manifest that whether the trial court erred in giving instruction No. 2 and in refusing to give instructions A and B depends upon the following question:

[3, 4] 2. Was the evidence before the jury in behalf of the defendant sufficient to have warranted the jury in finding that there was a market in which, by the exercise of reasonable diligence on the part of the plaintiff, the timbers embraced in the contract could have been procured by the plaintiff at the time of the breach of the contract by the defendant, within the contract time, or as soon as the substituted pieces were in fact procured (no damage being asserted in the case as due to such difference in time), at a price substantially less than the price paid by the plaintiff for the substituted steel pieces?

We say this for the following reasons:

It is true that it is well settled that where a seller is informed at the time of the contract of sale of goods that the goods are for shipment to another, and the seller breaches the contract by failing to deliver the goods specified within the time stipulated in the con-

tract, and the buyer substitutes for the goods embraced in the contract other articles, the nearest in price and quality which he can, by reasonable diligence, obtain at the time of the breach, and, where the case is one of resale, obtains no greater price for the substituted goods than the contract price, the measure of damages which the buyer is entitled to recover is the difference between what he pays for the substituted articles and the contract price for the goods, provided there was no available market at the time of the breach in which the goods contracted for could, by the exercise of reasonable diligence on his part, have been then obtained at a price substantially less than that paid. *Perry Tie & Lumber Co.* v. *Reynolds*, 100 Va. 264, 40 S. E. 919; *Hinde* v. *Liddell*, L. R. 10 Q. B. 265; *Rhind* v. *Freedley*, 74 N. J. L. 138, 64 Atl. 963-4; *Coal Co.* v. *Smelting Co.*, 53 Ill. App. 565. But it is equally well settled that, in case of such a breach of contract, it is the duty of the buyer to use reasonable diligence to minimize his damages arising from the breach. He cannot arbitrarily substitute for the goods contracted for any goods he may choose. If, at the time of the breach of the contract, there is a market from which he can, by reasonable diligence, obtain the goods contracted for, the measure of his damages for the breach of the contract is the difference between the contract price and the market price of the goods in such market at the time of the breach, plus any additional expense of freight, etc., not the price actually paid for substituted articles. See cases above cited and also *Sauer* v. *McClintic, etc., Co.*, 179 Mich. 618, 146 N. W. 422.

[5] There was in the instant case, as appears from the statement preceding this opinion, testimony before the jury in behalf of the defendant tending to show, and sufficient to have warranted the jury in finding, that

there was, at the time of the aforesaid breach of the contract, such a market as is mentioned in the question 2, stated above—that being a fact in issue.    There was, it is true, testimony for the plaintiff in direct conflict with that for the defendant on that subject.    But the finding of the aforesaid fact in issue from that conflict of testimony was, as is well settled under the procedure established in this jurisdiction, a subject solely within the province of the jury, and, if the giving of instruction 2 and the refusal of instructions A and B had the effect of withdrawing that subject from the jury, it was error and reversible error.

Now, on the latter subject, this only need be said:

[6]  Instruction 2, set forth in the statement preceding this opinion, as appears from the reading of it, is silent with respect to the qualification which, in accordance with the authorities above cited, it should have contained, namely, a qualification to the effect that, if the jury believed from the evidence, in addition to the facts stated in the instruction, the further fact that there was no market, at the time of the breach of the contract, in which the plaintiff, by the exercise of reasonable diligence, could have obtained the articles contracted for as promptly as they were obtained by the substitution of the steel articles (there being no claim in the case that the actual delay involved in the obtaining of the substituted articles caused any additional loss or damage), then the jury should find for the plaintiff, etc.    And, although silent with respect to this essential qualification, the instruction directed a verdict for the plaintiff.    It thus withdrew from the jury the finding from the conflict of testimony aforesaid, the aforesaid fact in issue; unless that defect can be considered as cured by instruction 1.

We do not think that instruction 1 can be considered

as having cured such defect.   It does concern the quali-
fication mentioned, but it deals with it in such general
terms that it sets up no standard and furnished no guide
to the jury by which they were to ascertain whether the
buyer did exercise the reasonable diligence mentioned in
this instruction.   It was only in the event that there
was a market, such as is above repeatedly mentioned,
existing at the time of the breach of the contract, that
the duty to exercise the diligence mentioned in instruc-
tion 1 arose; and such instruction is itself silent on the
subject of the market.

[7] Moreover, in view of the fact that there was tes-
timony tending to support instructions A and B, the
defendant was, under the well settled rule on the sub-
ject, entitled to have those or similar instructions given
to the jury, as they presented the defendant's theory of
the case, and, as aforesaid, correctly propounded the law
of the case bearing on the measure of damages, provided
the jury found the facts to be as hypothetically stated
in those instructions.

It follows, therefore, from what we have said, that
we are of opinion that the giving of instruction 2 and the
refusal of the court to give instructions A and B con-
stituted reversible error.

[8] 3. There is one other assignment of error, in ad-
dition to those above mentioned, which is based on an
exception taken to the action of the trial court in allow-
ing a witness for the plaintiff to testify, over the objec-
tion of the defendant, as to the purpose for which the
plaintiff was going to use the timbers in question.   As
we have seen, from what we have said above, in con-
nection with the authorities above cited, since it ap-
pears on the face of the contract in question that the
timbers were bought for shipment to a third person, that
is sufficient, along with the other circumstances in evi-

dence, to make the doctrine on the subject of the measure of damages above set forth applicable, so that it is immaterial whether the purpose for which the plaintiff was going to use the timbers did or did not further specifically appear in evidence.

For the reasons above set forth the case will be reversed and a new trial awarded the defendant.

*Reversed and a new trial awarded the defendant.*