# Richmond.

## S. I. SMITH v. COMMONWEALTH.

### January 20, 1927.

1. INDICTMENT AND INFORMATION—*Intent—Allegation of Intent—Attempt to Murder—Case at Bar.*—The evil intent, being an element in every crime, must always be in some way alleged, but when in the nature of the individual case the intent is a part of the acts alleged, it need not be separately stated. In a large part of the crimes, the vicious will appears, *prima facie,* in the act itself; hence to allege simply the act makes the required *prima facie* case, and any nonconcurrence of the will therein is matter of defense. Thus in the instant case where the indictment for an attempt to murder set out acts which constituted an attempt by accused to murder the prosecutor and charged that accused did attempt the crime of murder, the indictment was sufficient, although it did not charge the intent with which the acts alleged in the indictment where committed by the accused.

2. HOMICIDE—*Attempt to Commit Murder by Shooting—Indictment—Failure to Allege that Accused Could See the Prosecutor.*—In the instant case it was claimed that the indictment for an attempt to murder by shooting, was defective because it did not allege that the prosecutor was seen or could be seen by the accused or was in a position that the bullet could hit him at the time the pistol was fired.

   *Held:*   That the objection was without merit, as the indictment charged that the accused deliberately did discharge at and towards the prosecutor the pistol, the prosecutor at the time being close enough to the accused to be within carrying distance of the pistol.

3. EXCEPTIONS, BILL OF—*Objections to Instruction—Identification of the Instruction—Case at Bar.*—In the instant case there appeared in the record two sets of instructions, thirteen in all with no certificate of the clerk or judge that they were the instructions or all the instructions given in the case. The instructions were numbered from one to six and from one to seven, inclusive. In his bill of exceptions counsel for the accused objected to the giving of the instructions one to six for the Commonwealth. "That is to say: (See instructions, 1, 2, 3, 4, 5, 6, given by the Commonwealth, in the transcript of the record, which is hereby made a part of the bill of exceptions No. 1.)"

> *Held:* That instructions one to six given for the Commonwealth at-
> tempted to be made a part of the record by bill of exceptions No. 1
> were not properly identified by the bill of exceptions and could not be
> considered on appeal.

4. APPEAL AND ERROR—*Error in the Instructions—All Instructions must be
   made Part of the Record.*—When all the instructions given in a case
   are not made a part of the record the Supreme Court of Appeals will
   not consider alleged errors in giving or refusing instructions.

5. APPEAL AND ERROR—*Instructions—Refusal to Give an Instruction—
   Showing that the Instruction was not Covered by Other Instructions.*—
   The party asking a reversal for refusal to give an instruction must
   show by the record that there was no justification for refusing to
   give it, which he may do by bringing up all the instructions, or by
   having the court certify that the point was not covered by any other
   instruction.

6. HOMICIDE—*Attempt to Commit Murder by Shooting—Intent—Case at
   Bar.*—In the instant case, a prosecution for attempt to commit mur-
   der by shooting, the chief contention of the defendant was that no
   intent was shown on his part to kill and he based this upon what he
   declared to be an undisputed fact that at no time did he shoot at
   or even in the direction of the prosecutor.

> *Held:* That the jury had a right to find the verdict of guilty which
> they did find, even if the defendant did not see the prosecutor and
> therefore did not fire directly at him, if they believed as they had a
> right to believe from the evidence that defendant had a general idea
> where the prosecutor was and fired where he thought he was.

Error to a judgment of the Circuit Court of Notto-
way county.

*Affirmed.*

The opinion states the case.

*Fulton & Thompson,* for the plaintiff in error.

*John R. Saunders, Attorney General, Leon M. Bazile*
and *Lewis H. Machen, Assistant Attorneys General,* for
the Commonwealth.

CHICHESTER, J., delivered the opinion of the court.

Plaintiff in error, hereafter called defendant, was convicted in the Circuit Court of Nottoway county on October 3, .1925, of an attempt to murder one C. C. Loy. From the judgment of the circuit court sentencing defendant to confinement in the penitentiary for two years, as fixed by the verdict of the jury, a writ of error was duly allowed.

The errors assigned are: 1. That the trial court erred in not sustaining the demurrer to the indictment. 2. That the trial court erred in giving six instructions asked for by the Commonwealth and objected to by defendant. 3. That the trial court erred in refusing an instruction offered by defendant, and 4. That the trial court erred in refusing to set aside the verdict of the jury as being contrary to the law and the evidence.

1. The indictment consisted of two counts. Omitting the formal parts, the first count charged that the accused "did unlawfully, feloniously, wilfully, maliciously, deliberately and of his malice aforethought make an assault in and upon the body of one C. C. Loy, and that the said S. I. Smith unlawfully, feloniously, wilfully, maliciously, deliberately and of his malice aforethought did attempt to commit the crime of murder, by then and there with a pistol then and there charged and loaded with gunpowder and leaden bullets, which said pistol, he, the said S. I. Smith, in his hand, then and there had and held, then and there feloniously, wilfully, deliberately, and of his malice aforethought, did discharge and shoot off, at and towards the said C. C. Loy, he the said C. C. Loy, at the time of the said shooting being close enough to the said S. I. Smith to be within carrying distance of said pistol.

"And so the jurors aforesaid, upon their oath aforesaid, do further present that the said S. I. Smith, in

the county aforesaid, in manner and form aforesaid, unlawfully, wilfully, deliberately and feloniously, and with malice aforethought, did attempt to kill and murder the said C. C. Loy   *   *   *."

Omitting the formal parts, the second count charged that the accused "did feloniously attempt to commit the crime of murder by then and there, with a pistol, then and there charged and loaded with gunpowder and leaden bullets, which said pistol, he the said S. I. Smith in his hand then and there held, then and there feloniously, wilfully and of his malice aforethought, did discharge and shoot off, at and towards one C. C. Loy, he the said S. I. Smith, at the time of said shooting being close enough to the said C. C. Loy to be within carrying distance of said pistol,   *   *   *."

[1] It is claimed that the indictment is bad because it did not charge the intent with which the acts alleged in the indictment were committed by the accused.

There is no merit in this assignment.

The question was disposed of adversely to the contention of defendant in *Broaddus* v. *Commonwealth*, 126 Va. 733, 740, 745, 101 S. E. 321. See also *State* v. *Hager*, 50 W. Va. 370, 371-2, 40 S. E. 393, and the authorities cited.

[2] It is also claimed that the indictment is defective because it does not allege that Loy was seen, or could be seen, by the accused, or was in a position that the bullet could hit him at the time the pistol was fired. This objection is clearly without merit.

The indictment charged that the accused "deliberately and of his malice aforethought did discharge and shoot off, at and towards the said C. C. Loy, the said pistol, the said C. C. Loy, at the time of the said shooting being close enough to the said S. I. Smith to be within carrying distance of said pistol."

[3] 2. The instructions Nos. 1, 2, 3, 4, 5 and 6, given for the Commonwealth, attempted to be made a part of the record by bill of exceptions No. 1, are not properly identified by the bill of exceptions and cannot be considered by this court. This bill of exceptions is as follows: "Be it remembered, that after the jury was sworn to try the issue joined in this case, the Commonwealth, to prove and maintain the said issue on its part, introduced the following evidence:

"(See Commonwealth's evidence hereto attached as a part of this bill of exceptions No. 1.)

"And the defendant introduced the following evidence:

"(See defendant's evidence hereto attached as a part of this bill of exceptions No. 1.)

"Whereupon, counsel for the Commonwealth moved the court to instruct the jury as follows: That is to say: (See instructions Nos. 1, 2, 3, 4, 5, 6, given by the Commonwealth, in the transcript of the record, which is hereby made a part of the bill of exceptions No. 1.) And the accused moved the court to reject said instructions to the jury, whereupon, the court overruled the objection of the accused to said instructions, to which opinion of the court overruling said objection, the accused, by his counsel, excepted and tenders this his bill of exceptions No. 1, and which he prays may be signed, sealed and made a part of the record in this cause, and the same is accordingly done this 23rd day of November, 1925."

There appear in the record two sets of instructions, thirteen in all, with no certificate of the clerk or judge that they were the instructions or all of the instructions given in the case. They are numbered from 1 to 6 and from 1 to 7, inclusive, and the bill of exceptions does not identify which set is excepted to or objected to.

As will be seen the bill of exceptions is in skeleton form and the only means of identification of the instructions complained of is the reference to the numbers, 1, 2, 3, 4, 5, 6, as instructions asked for by the Commonwealth. No mention whatsoever is made of the instructions offered by the accused and given at his instance by the court in this bill of exceptions or in any other, nor is reference made to any other instruction that may have been given at the instance of the Commonwealth which was unobjectionable, and it is to be observed that no mention is made in this bill, or anywhere else in the record, that the instructions numbered from one to six, given for the Commonwealth, were all of the instructions which were given in the case.

[4] When all the instructions given in a case are not made a part of the record this court will not consider alleged errors in giving or refusing instructions. *Harris* v. *Com.*, 133 Va. 700, 112 S. E. 753; *Parker* v. *Com.*, 135 Va. 625, 115 S. E. 566.

The instant case is distinguished from *Barnard* v. *Com.*, 134 Va. 613, in that there were three skeleton bills of exceptions in that case numbered 8, 9, and 10, which sought to make instructions a part of the record. Bill of exceptions No. 8 certified the instructions numbered from one to twelve, inclusive, as a part thereof by reference to the numbers. Bill of exception No. 9 made certain other instructions numbered either by letters or figures a part thereof by reference, while bill of exceptions No. 10 certified that the instructions mentioned as given on motion of the Commonwealth or the accused "were all of the instructions that were given in the case, and the court doth so certify."

This court said of these bills of exceptions: "*   *
*   While it does not affirmatively appear that these

identifying numbers and letters were made thereon by the judge, we think it fair for us to assume that they were made either by him or by his directions. * *"

While we conclude that the objection to the instructions cannot be considered by this court, a perusal of those appearing in the record satisfies us that they were applicable to the case at bar and not subject to the objections raised to them.

[5] 3. The third assignment of error, that the court erred in refusing to give an instruction asked for by defendant, fails for the reason that the record nowhere shows whether the same point was covered by other instruction, nor does it show all the instructions given in the case. In *Harris* v. *Com.*, *supra*, it is said: "The party asking a reversal for refusal to give an instruction must show by the record that there was no justification for refusing to give it, which he may do by bringing up all the instructions, or by having the court certify that the point was not covered by any other instruction. *Teter* v. *Ins. Co.*, 74 W. Va. 344, 82 S. E. 40."

[6] 4. This assignment requires a statement of the pertinent facts established by the evidence. It appears from the testimony in the case that C. C. Loy, his wife and two children, moved to Crewe in February, 1924. When Loy and his family first moved to Crewe, the accused's wife was living, but she died sometime prior to the commission of the crime charged in the indictment. Sometime after moving to Crewe, Loy observed what appeared to him to be a relationship between the accused and his (Loy's) wife that aroused his suspicions. The accused was warned by Loy but Loy's suspicions remained. The accused worked in the day and Loy worked at night. On the

night the crime charged in the indictment was committed, Loy, after going to work, without warning returned to his home during the night.   He went to his back gate and watched the house, where he saw a light upstairs in the children's room and a light in the dining room.   After about fifteen or twenty minutes, the light in the dining room was put out.   Loy then tried to enter the house through the door, which was always left open for his return from work, and he found this fastened.   He went to another door and found that fastened, and then he went to the front door to which he had a key.   He opened this door and started in the house, whereupon his oldest child, a girl, called to her mother.   He passed the front door and went into the dining room and turned the light on, then to the kitchen and pantry which he also lighted.   He found his wife coming out of the door in her underclothes with her dress on her arm, and wearing bedroom slippers.   She was very much excited. He looked around the room and found a pallet, made of bed clothing, under the window with the shades down, and the closet door standing open about an inch.   He went to the closet and opened it and, finding some one in it, stepped back latching the door.   Almost immediately the accused broke out of the closet while Loy returned to the back porch.   As the accused came out he fired his pistol once in the hall, the bullet passing through the front door into the floor of the porch.   After firing two shots the accused, to use the words of the prosecutor, "turned around like this    *    * and shot again, and it turned direct, right on me, so I fell back against the wall and said: 'Oh, Lord, I am shot.' "   When asked by a juror whether the witness knew the position the prosecutor was in, Loy testified:   "*    *    the last two shots he absolutely.

knew, because he was looking right at me." When defendant was shooting Loy was only about sixteen feet distant from him.

The defense made by the accused was that he had gone to the prosecutor's house in answer to a note written by the prosecutor's wife, asking him to come there so that she could communicate to him certain threats made by the prosecutor against the accused; that while there he was surprised by the prosecutor; that at the request of Mrs. Loy he hid in the closet and that, when he tried to escape, in some way his pistol was fired accidentally without his knowing how it was done, but that he did not intend to shoot at the prosecutor, and that the last shot which passed near defendant's head struck the stairway first and was accidentally deflected in the direction of Loy.

The chief contention of defendant is that no intent is shown on his part to kill, and he bases this upon what he declares is an undisputed fact that at no time did he shoot at or even in the direction of Loy.

We think, however, that if the jury believed the facts as narrated above, they were sufficient to justify the conviction of the accused of an attempt to commit murder.

Under the circumstances of this case we think the jury had a right to find the verdict they did find, even if the defendant did not see Loy and therefore did not fire directly at him, if they believed, as they had a right to believe, from the evidence, he had a general idea where Loy was and fired where he thought he was.

In *People v. Lee Kong*, 95 Cal. 666, 30 page 800, 17 L. R. A. 626, 29 Am. St. Rep. 165, the court held that a person has the present ability to accomplish murder intended when he has a loaded pistol, and the

person intended to be fired at is within reach of its effect, and the fact that the accused was mistaken as to the exact spot where the victim was located at the time of the firing is immaterial.

The court said (pages 670-1 [30 page 801]): "In this case the appellant had the present ability to inflict the injury. He knew the officer was upon the roof, and knowing that fact he fired through the roof with the full determination of killing him. The fact that he was mistaken in judgment as to the exact spot where his intended victim was located is immaterial. That the shot did not fulfill the mission intended was not attributable to forbearance or kindness of heart upon the defendant's part; neither did the officer escape by reason of the fact of his being so far distant that the deadly missile could do him no harm. He was sufficiently near to be killed from a bullet from the pistol, and his antagonist fired with the intent of killing him. Appellant's mistake as to the policeman's exact location upon the roof affords no excuse for his act, and causes the act to be no less an assault. These acts disclose an assault to murder as fully as though a person should fire into a house with the intention of killing the occupant, who fortunately escaped the range of the bullet. (See *Cowley* v. *State*, 10 Lea [Tenn.], 282). The fact that the shots were directed indiscriminately into the house rather than that the intended murderer calculated that the occupant was located at a particular spot, and then trained his fire to that point, could not affect the question. The assault would be complete and entire in either case. If a man intending murder, being in darkness and guided by sound only, should fire, and the bullet should pierce the spot where the party was supposed to be, but by a mistake in hearing the in-

tended victim was not at the point of danger, but some distance therefrom, and yet within reach of the pistol ball, the crime of assault to commit murder would be made out; for the unlawful attempt and the present ability are found coupled together. If the appellant's aim had not been good, or if through fright or accident when pointing the weapon or pulling the trigger, or if the ball had been deflected in its course from the intended point of attack, and by reason of the occurrence of any one of these contingencies the party had been shot and killed, a murder would have been committed. Such being the fact, the assault is established."

See also *Lee* v. *Commonwealth*, 144 Va. 594, 131 S. E. 212.

In *Walker* v. *Commonwealth*, 132 Va. 595, 597, 110 S. E. 253, 254, this court said: "Under Code 1919, section 6363, this court is inhibited from setting aside a verdict approved by the trial court unless it appears from the evidence that such judgment is plainly wrong and without evidence to support it. To reverse these convictions would be to disregard this statute."

Upon the whole case we see no error in the judgment complained of, and we are of opinion to affirm it.

*Affirmed.*

West, J., dissenting:

I cannot concur in the opinion of the majority.

W. I. Smith was convicted of an attempt to murder C. C. Loy. The only evidence of any attempt on the part of Smith to kill Loy is the testimony of Loy, when he says he "turned round like this     *     *     and shot again, and it turned direct, right on me. So I fell back against the wall and said: 'Oh, Lord, I am shot.' "

This statement is contradicted by the physical facts

in the case and is therefore not to be accepted as true by the jury or the court. The uncontradicted evidence is that only three shots were fired, and they were fired by Smith from his automatic pistol, accidentally, or for the purpose of scaring Loy, while he was trying to get out of the house through the front door. Loy admits that the two bullets, the marks of which are at the front door, could not have been directed towards him. The physical facts show that neither shot was fired in the direction of Loy, who was in the back porch. One shot went through the front door into the floor of the front porch, the second lodged in the framed part of the front door, and the third struck the wainscoting to the staircase on the left side of the front hall as you enter the front door. Had the bullet last fired indented the wainscoting, it would not have gone within ten or twelve feet of Loy. The mark of this bullet on the staircase proves, beyond all reasonable doubt, that it was not fired at or towards Loy. It so happened that when it struck the staircase it was deflected in its course, and went into the dining room window on the back porch. The whole evidence negatives the contention that Smith attempted to murder Loy, and shows that he was simply trying to make his escape from the house without being killed.

In my view of the case, the Commonwealth has failed to prove that Smith shot at or towards Loy, or that he had any desire or intention to kill him.

I think the judgment should be reversed and a new trial awarded.