(No. 16092.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM C. HUBBARD, Plaintiff in Error.

*Opinion filed October 28, 1924.*

1. ATTORNEYS AT LAW—*what constitutes a violation of statute against practicing without a license.* A party who represents to clients that he is an attorney at law when he is not, though he practices only before a justice of the peace, is guilty of a violation of the act of 1905 (Smith's Stat. 1923, p. 90,) to prevent and punish frauds in the practice of law.

2. SAME—*statute relating to attorneys, as amended in 1917, does not repeal provision of 1905 of Criminal Code.* The act in relation to attorneys and counselors, as amended in 1917, (Smith's Stat. 1923, p. 90,) in effect permitting practice before a justice of the peace by one who is not a licensed attorney, does not repeal by implication the provision of 1905 of the Criminal Code to prevent and punish frauds in the practice of law, as the latter act aims to prevent practice as an attorney at law or any other form of representation that one is an attorney at law when he is not, whether it consists in giving legal advice or representing a client in court.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the County Court of Franklin county; the Hon. SIDNEY M. WARD, Judge, presiding.

J. E. CARR, and GEORGE SAWYER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROY C. MAR-
TIN, State's Attorney, and JAMES B. SEARCY, (THURLOW G.
LEWIS, and NEALY Q. GLENN, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

William C. Hubbard was convicted in the county court
of Franklin county of the offense of holding himself out
as an attorney at law without being regularly licensed to
practice as such. The judgment entered on the verdict was
affirmed by the Appellate Court, and he prosecutes this writ
of error for a further review.

Hubbard located at Zeigler on August 27, 1921, and was
appointed city attorney on March 18, 1922. Prior to com-
ing to Zeigler he was licensed to practice law in the State
of Missouri. While he was a resident of Illinois he was
admitted to practice law in the State of Indiana. Janu-
ary 3, 1922, two and one-half months before he was ap-
pointed city attorney, Hubbard accepted a fee of $45 from
Antoni Psepiorkoski to secure a divorce for the latter's
daughter, Helen Skucki. She testified that she went to
Hubbard's office at Zeigler on the first day of January and
asked him if he was a lawyer and that he replied that he
was; that she told him that her husband was a drunkard
and treated her cruelly and asked him if he could get her
a divorce; that he told her he could and that it would cost
her $45; that she paid him $20 at that time and that $25
was paid two days later; that she went with her father
and that Hubbard gave her father a receipt for the money;
that about the middle of February Hubbard told her that
J. E. Carr, a lawyer at West Frankfort, would look after
her case when it came up in the circuit court at Benton;
that Carr tried her case and secured the divorce for her;
that she did not pay Carr any money.

In December, 1921, Minnie Mabon employed Hubbard to represent her in some litigation she was having with her husband. She testified that Hubbard told her he was a lawyer and could secure a divorce for her; that she paid him $15; that he took her to Carr, at West Frankfort, and told her that Carr was his partner; that later she received a notice to appear in court as a defendant in a suit filed by her husband; that she did not appear in court, and she understood her husband procured a divorce from her.

In February, 1923, Jacob Gabor called to see Hubbard regarding a case pending in the county court of Franklin county on appeal from a justice of the peace. He testified that he asked Hubbard if he could handle the case, and that Hubbard said he was a licensed attorney and could handle the case at Benton the same as he had handled it before the justice of the peace; that Gabor paid him $15; that Hubbard came to his house some time later and threw the $15 down on a table; that he looked angry, said nothing, and walked out of the house.

Hubbard testified that he had never held himself out as a licensed attorney and had always refused to practice in courts of record; that Psepiorkoski came to him about securing a divorce for his daughter; that he told Psepiorkoski that he was only city attorney and could not practice in the circuit court; that he talked to Psepiorkoski about the case and told him that his daughter could secure a divorce; that he retained Carr for them and that Carr secured her divorce; that Minnie Mabon came to him and asked him to represent her before a justice of the peace in a prosecution against her husband for wife abandonment; that he did not tell her he was a lawyer and that she asked him no questions about it; that she asked him to prosecute the case for her before the justice of the peace and that he rendered the service and made a charge for it; that the husband was bound over to await the action of the grand jury and was released on bond; that she returned with him to

his office and told him she wanted to secure a divorce; that he told her that he could not get a divorce for her but that he would take her to a lawyer who could; that he drove her in his automobile to see Carr, at West Frankfort; that Jake Gabor's wife had trouble with a young man and the latter was arrested for disturbing the peace; that it was a city case and that he prosecuted the case as city attorney; that an appeal was taken to the county court and Gabor came to see him about the case before it was called for trial; that he told Gabor that the city had employed Carr to prosecute the case in the county court; that Gabor said he wanted to employ some attorney to help prosecute the case; that he told him he might pay Carr some extra money, if he cared to; that Gabor gave him $15 to take to Carr; that one Elkins told him that Gabor had employed Judge Hart, at Benton, to prosecute the case, and that he returned the $15 to Gabor.

The principal contention of plaintiff in error is that the evidence is not sufficient to justify the verdict of guilty. The fact that people called at his office and consulted him regarding legal matters and the fact that he was appointed city attorney are strong circumstances indicating that he was holding himself out as an attorney at law. Three witnesses testified positively that he told them he was a lawyer and had authority to represent them before the courts of this State. He admits that he appeared before a justice of the peace in Zeigler on different occasions as the attorney for the city of Zeigler and as the attorney for Minnie Mabon. The act under which this prosecution is brought provides: "That any person residing in this State not being regularly licensed to practice law in the courts of this State, who shall in any manner hold himself out as an attorney at law or solicitor in chancery or represent himself either verbally or in writing, directly or indirectly, as authorized to practice law, shall be guilty of a misdemeanor." When plaintiff in error appeared before a justice of the peace

as an attorney at law, representing clients for hire, he was clearly violating the provisions of this statute.

The second contention of plaintiff in error is that the act to prevent and punish frauds in the practice of law, approved May 16, 1905, which is the act under which this prosecution was instituted, is irreconcilable with, repugnant to, and therefore repealed by, the act to revise the law in relation to attorneys and counselors, as amended by the law of 1917, the contention being that the latter act permits persons to represent clients before a justice of the peace. This act provides that no person, without having previously obtained a license for the purpose, shall be permitted to practice as an attorney or counselor at law, or to commence, conduct or defend any action or suit in which he is not a party concerned, in any court of record within this State. The meaning of this act is plain. It prohibits any person, not regularly licensed, to practice in any capacity whatever as an attorney or counselor at law, whether that practice consists in giving legal advice in the office or in representing a client in court. The act likewise prohibits any person, not a party concerned, to commence, conduct or defend, in any capacity, any action or suit in a court of record. While a person not licensed to practice law might, as the agent of another, commence, conduct or defend an action before a justice of the peace, he could not perform this service as an attorney at law. Although the legislature might well have combined these two statutes and thereby avoided double legislation on the same subject matter, they are not so repugnant to each other as to render one of them void.

There being no reversible error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*