# Richmond.

## GEORGE SINK v. COMMONWEALTH.

March 21, 1929.

The opinion states the case.

*B. G. Garrett* and *Harvey B. Apperson*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General*, for the Commonwealth.

CHICHESTER, J., delivered the opinion of the court.

The writ of error awarded in this case brings before this court for review a verdict and judgment of the Circuit Court of Montgomery county in which George Sink, a married man, was, on October 1, 1927, adjudged guilty of seducing one Lucile Preston, and his punishment fixed at seven years in the penitentiary.

There are three assignments of error.

1. That the trial court permitted the attorney for the Commonwealth, upon demurrer to the indictment, to amend the indictment, and refused to sustain the demurrer.

2. That the trial court refused to set aside the verdict of the jury on the ground that it was contrary to the law and the evidence.

3. That the trial court refused to give certain instructions asked for by the defendant.

1. The indictment, omitting the formal parts, reads as follows: "* * * That George Sink did in the county aforesaid on the 17th day of October, 1926, and within one year next preceding this indictment, being then a married man and having a lawful wife then

living, unlawfully and feloniously seduce and have illicit connection and carnal knowledge of the body of one Lucile Preston, an unmarried female of *previous chaste character* through false statements that he, the said George Sink, was unmarried and through false promises of marriage, against the peace and dignity of the Commonwealth of Virginia." (Italics supplied.)

The indictment, previous to the amendment which appears in italics, charged that Lucile Preston was an unmarried female of chastity and virtue. It is contended that the allegations that the prosecutrix was a female of chastity and virtue is not the same in form or substance as that contained in the statute ("an unmarried female of previous chaste character"); that the charge should have been made in the language of the statute and that the indictment was not amendable as the amendment changed the nature of the offense.

While it is true it is dangerous to charge a statutory offense in words different from those used in the statute, it is, nevertheless, well settled that it is unnecessary in an indictment under a statute to use the precise language thereof in describing the offense, if the words used are equivalent to those used in the statute. *Whitlock* v. *Commonwealth*, 89 Va. 337, 15 S. E. 893 (1892); *Taylor* v. *Commonwealth*, 20 Gratt. (61 Va.) 825 (1871); *Old* v. *Commonwealth*, 18 Gratt. (59 Va.) 915, 927, (1867); *Christian* v. *Commonwealth*, 23 Gratt. (64 Va.) 954 (1873).

In *Commonwealth* v. *Young*, 15 Gratt. (56 Va.) 664, 666 (1860), Moncure, J., speaking for the court, said: "The second objection is a more serious one. In an indictment for a statutory offense, it is generally proper and safest to describe the offense in the very terms used by the statute for that purpose. But it is sufficient to use in the indictment such terms of de-

scription, as that, if true, the accused must of necessity be guilty of the offense described in the statute; and especially so in a case, falling, as this does, in that class, concerning which the law provides that 'no exception shall be allowed for any defect or want of form in the presentment,. indictment or information, but the court shall give judgment thereon according to the very right of the case.' Code 1849, page 772, chapter 207, section 24, * * *''.

In the article on seduction in 19 Ency. Pl. and Pr., page 415, it is said: "* * * So an indictment is good if it substantially follows the language of the statute or alleges in form substantially good all the material facts requisite to constitute the crime of seduction under the statute."

■ We think the words used in the indictment as it originally appeared are equivalent to charging that the prosecutrix was an unmarried female of previous chaste character. This being true the cases cited and quoted from above are controlling.

■ The action of the trial court in permitting the amendment to the indictment to make it conform in form to the statute was not improper, and was entirely permissible under section 4878 of the Code.[1]

■ 2. We do not think the court erred in refusing to

1. "If there be any defect in form in any indictment for treason or felony, it shall be competent for the court in which the case is pending for trial, after the defendant pleads, to amend the said indictment, provided such amendment does not change the nature of the offense charged; and if, on the trial of any case, there shall appear to be any variance between the allegations of the indictment and the evidence offered in proof thereof, it shall be competent for the court before which the trial is had to amend the said indictment, according to the proof, provided such amendment does not change the nature of the offense charged, and after such amendment the indictment as amended shall be read to the accused, and he shall be allowed to plead anew; if he so desires, and the trial shall proceed in all respects, and with the same consequences, as if no variance had occurred, unless such amendment shall operate as a surprise to the defendant, in which case the defendant shall be entitled, upon request, to a continuance of the cause."

set aside the verdict of the jury as contrary to the law and the evidence. The motion to set aside the verdict is not based upon any alleged lack of corroboration. The accused rested his defense of "not guilty," first upon his statement that he had never at any time had intercourse with the prosecutrix, and second that if he had the prosecutrix indulged in the act as much for the gratification of her own sexual desire as for anything else. The jury disposed of the first line of defense, and very properly, by finding the accused guilty. We need not go into the sordid details of the case further than to say that the accused was introduced to the prosecutrix in the latter part of August, or the early part of September, 1926. At that time she was sixteen years of age. The accused, who was a married man separated from his family, consisting of a wife and two children living in Bedford county, was twenty-six years of age. He represented himself to the prosecutrix and her family as being an unmarried man. The day on which the seduction occurred he told the prosecutrix's father that he was an unmarried man; that he had been married but his wife died "on the 14th of December, 1925." The accused admitted that he had written the prosecutrix's father to this effect.

The prosecutrix testified that she fell in love with the accused the first time she saw him; "that she loved him better than anybody she ever saw the first time she saw him, and that they were to be married the Sunday before the following Thanksgiving." The accused wrote the prosecutrix a number of love letters and one of them which he wrote to her on November 16, 1926, is found in the record.

In this letter he expressed the warmest love and affection for the prosecutrix. After indulging in all the endearing terms with which the letter abounded, he sent

her his love and kisses, and concluded: "To my loving Lucile P. (Sink)," adding his own name in parentheses.

On the day on which the accused consummated the seduction of the prosecutrix, and shortly prior thereto, he told Rosa St. Clair that, if she and her sweetheart did not hurry up and marry, "Louise," referring to the presecutrix, "and I will beat you." The prosecutrix told Rosa St. Clair, before October 17th, that she and the accused "were to be married on Sunday before Thanksgiving." Mary B. Wertz testified that the accused told her that he and Lucile "were to be married." The witness could not say, however, whether the accused made this statement to her prior to or after October 16, 1926. Rosa St. Clair testified that when the accused and the prosecutrix were in her presence on October 17th their "conduct was loving."

The accused admitted that the tone of the letters, passing between him and the prosecutrix, "was loving." On November 1, 1926, after the seduction had been consummated, the accused wrote the prosecutrix's father that he was unmarried. The prosecutrix testified that the seduction was consummated on the evening of October 17, 1926, and that at that time she believed him to be an unmarried man.

On the Sunday preceding October 17, 1926, the accused first broached the subject of intercourse to her and she declined. The following Sunday he again visited her and renewed his request, the prosecutrix again declining. That afternoon, after the accused left her house, she went to the home of Rosa St. Clair and unexpectedly met him there. Accompanied by Rosa St. Clair, the prosecutrix and the accused left the St. Clair home between six and six-thirty in a roadster. They met some of Rosa St. Clair's friends, and Rosa left the roadster to walk with her friends. The pros-

ecutrix and the accused proceeded alone to a spring on the Lee highway, where the act of intercourse occurred. An illegitimate child was born to the prosecutrix the following July.

That there was ample evidence and ample corroboration to support the verdict there can be no doubt. The prosecutrix had testified on direct examination that "I loved him and he had promised to marry me— he asked me and I just let him do it. I didn't know he was married."

On cross-examination, she was asked:

"Q. Miss Preston, you did it just as much for the gratification of your own sexual desire as for anything else?

"A. I guess I did."

And, after further cross-examination, the question was repeated to her in these words:

"Q. I believe you told us once that you did it just as much for the gratification of your own sexual desire as for anything else?

"A. I told you that once and am not going to tell you any more.

"Q. All we want is the truth, Miss Preston.

"A. Yes; I did."

██ Accused contends that if the prosecutrix indulged in the act of intercourse for the gratification of her own passion there can be no seduction. This is not the law. It is true that where the female has not been seduced but voluntarily and *solely* for the gratification of her sexual desires, submits to the intercourse, there is no seduction. But where the seducer has gained the love of his victim and inflamed her passion, it is not a sufficient answer to say that his victim yielded to gratify her own passion. It must be shown that she yielded solely for this reason. *Flick* v. *Commonwealth*,

97 Va. 766, 34 S. E. 39. It is safe to assert that all cases of seduction are cases where the seducer seeks by means of love making, or by other means, to so inflame the passion of the female as to cause her to submit to his desires. The instant case is typical.

The distinction between yielding voluntarily and solely for the gratification of the prosecutrix's sexual desire and yielding because of love and to gratify sexual desire aroused thereby is recognized in *Keller* v. *State,* 102 Ga. 506, 31 S. E. 92, where the court said: "* * * A woman who has never been married, and who has never had sexual intercourse, is in law virtuous, in the sense that she may be the victim of seduction. Whether such a woman has really been seduced, or only joined with her alleged seducer in the gratification of lewd and lascivious desire, not excited by his arts and importunities, but having its roots in her own depraved and debauched mind, is a question the jury are to consider under all the facts and circumstances in proof before them. *Ibid.* And, in any given instance, they are to decide whether she yielded to the accused, not because of persuasion and promises of marriage, or by reason of other false and fraudulent means, but because she was lustful, wanton, and desirous of the intercourse in order to gratify her own passions. Every virgin, however passionate her nature, may be seduced if, notwithstanding her lustful desires, she keeps her chastity and surrenders it only because of persuasion and promises of marriage, which, coupled with her love for and confidence in her tempter, overcome her virtue and cause her to yield to his importunities. For 'the weakest of all weak virgins is under the protection of law against the seducer, and if her fall can be traced to actual seduction, the law will be, and should be, her avenger.' * * *"

The same subject was discussed by this court in *Mills* v. *Commonwealth*, 93 Va. 815, 819, 22 S. E. 863, 864 (1895), where the court, speaking through Keith, P, said: "* * * There are women in whose presence every evil thought stands abashed. They are guarded by their innocence and purity and need no other protection. They stand invulnerable in their own virtue. There are others whose dispositions are more easy and complaisant, but who would have perhaps escaped irretrievable ruin had not their confidence been secured, and their apprehensions put at rest, by a promise of marriage. To shield and save them from the arts of the seducer was the object of the law. It would be but a mockery to extend its protecting care only to those who have no need of its assistance. It should be here and ever the refuge and support of those who most need its protection."

It is clear therefore that the passion aroused in the prosecutrix by the accused will not excuse him where that passion is excited and consent obtained by means of the arts of the seducer.

As was said in *Flick* v. *Commonwealth, supra*: "* * * To seduce is to lead astray from the path of virtue. It does not consist in arts and blandishments. They are the means by which the crime is accomplished, and not the crime itself, and therefore Bishop says: 'In determining whether or not there is a sufficient seducing, the precise statutory terms should be regarded. Aside from such terms, the kind and extent of the seductive arts appear to depend less on absolute rule than on the circumstances of the particular case—among them the character, age, intelligence, and education of the woman. In general, if in fact they accomplish the object they are sufficient in law.' Bish. Stat. Crimes, section 640."

██ It must be remembered that the prosecutrix in this case was a girl only sixteen years old; that she loved the accused and he, posing as an unmarried man, had promised to marry her in less than a month subsequent to the date of the act of intercourse; that he was ten years her senior, married, and with the experience of one of his age. It is no doubt true that the prosecutrix engaged in the act of intercourse for the gratification of her sexual desires, but she does not say and the evidence negatives the idea that she engaged in the act voluntarily and solely for the gratification of those desires. But this question was submitted to the jury by an instruction which told them "that if they believe from the evidence that the prosecutrix was not seduced by the defendant, but voluntarily, and solely for the gratification of her sexual desire, or other reasons, submitted to the connection, then the defendant is not guilty of the crime."

We cannot better conclude our discussion and endorsement of the action of the trial court in refusing to set aside the verdict of the jury than by quoting Keith, P., in *Flick* v. *Commonwealth, supra*: "If there can be degrees in a crime so shocking in its consequences as the seduction of an innocent woman, the greater guilt would seem to attach to the married rather than to the unmarried man. His age, his experience, the duty he owes to his wife, all conspire to darken the offense, and he is unable to make reparation by marriage, as an unmarried man may do. From its inception his effort to win the affection of a woman other than his wife is criminal and infamous. Of necessity, therefore, it is as far as possible concealed from every eye, and if courts and juries are required to follow the "trail of the serpent" throughout his dark and devious course, truly the path of the seducer would be made easy."

3. The third assignment of error is based upon the action of the trial court in refusing certain instructions offered by the defense. It does not appear from the bill of exceptions or elsewhere in the record whether all the instructions given by the court were certified therein. With the record in this state this court cannot consider an assignment of error based on the refusal of the trial court to give certain instructions.

In *Harris* v. *Commonwealth*, 133 Va. 700, 112 S. E. 753, West, J., speaking for this court said: "* * * The rulings of the trial court are presumed to be correct, unless the contrary appears from the record. The rule is that the record should show in terms, or by clear inference, that the instructions found in the record are all the instructions that were given by the trial court, and the record in the instant case does not meet this requirement. The court may have refused to give the instruction in question on the ground that the same was covered by some other instruction that was given, but which does not appear in the record. The party asking a reversal for refusal to give an instruction must show by the record that there was no justification for refusing to give it, which he may do by bringing up all the instructions, or by having the court certify that the point was not covered by any other instruction. *Teter* v. *Franklin Fire Ins. Co.*, 74 W. Va. 344, 82 S. E. 40."

*Parker* v. *Commonwealth*, 135 Va. 625, 632, 115 S. E. 566 (1923).

The holding in the *Harris Case* is controlling in the instant case. But even if this were not true it appears from the instructions which were certified that the jury was fully and correctly instructed, so far as the accused is concerned, and that he has no just ground to complain on this account.

Upon the whole case we are of opinion to affirm the judgment of the trial court.

*Affirmed.*