# Richmond

COMMONWEALTH OF VIRGINIA V. A. L. DOSS.

January 12, 1933.

Present, All the Justices.

The opinion states the case.

*E. N. Hardy, Jr., J. Warren Topping* and *John R. Saunders, Attorney-General,* for the Commonwealth.

*Joel W. Flood* and *W. M. Abbitt,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This prosecution deals with an alleged violation of the motor vehicle laws of Virginia.

A. L. Doss was tried under this warrant:

"Virginia, Appomattox county.

"To C. W. Woodson and L. L. Stanley, State officers:

"Whereas C. W. Woodson and L. L. Stanley have this day made complaint and information on oath before me T. W. Moses, a justice of the peace for said county, that A. L. Doss did on the 1st day of September, 1932, in said county, operate truck with improper license, violating chapter 342, section 35.

"These are, therefore, in the name of the Commonwealth of Virginia, to command you to forthwith to apprehend the said A. L. Doss and bring him before me or some other justice of said county, to answer complaint, and to be dealt with according to law."

The defendant was acquitted. From that judgment the Commonwealth, under authority of section 88 of our Constitution, appealed, being of opinion that its revenues were involved. All matters of law and fact were submitted to the Circuit Court of Appomattox county, which, after a full hearing, found for him. That judgment is now before us on review.

In 1926 the legislature, by session act approved March 17, 1926, codified the laws relating to motor vehicles. In section 29, Acts 1926, pages 273-275, chapter 149, is

the schedule of license charges for trucks and automobiles.

In 1930 (Acts 1930, pages 924-928, chapter 430), section 29 of the act of 1926 was amended. The schedule of basic charges was retained, but in addition to the fees already provided for supplemental charges in certain instances were assessed, which were themselves, in turn, subject to defined exceptions, as this excerpt from the statute shows:

"(f)   In addition to the fees hereinbefore provided for in subsection (c) of this section, for the operation of each vehicle operated as a property carrier where the owner or operator of such vehicle holds himself out for employment, only for the transportation of specific loads or commodities for one person or firm on a single trip to or from the city, town or location from which said carrier operates, to such other cities, towns or locations, over any highway of the State, or between cities and towns thereof, but who will not operate upon a regular schedule, nor solicit nor receive patronage along the route, or between the cities, towns, or locations served by a class C carrier, one ton truck, ten ($10.00) dollars; one and one-half ton truck, fifteen ($15.00) dollars; two ton truck, twenty ($20.00) dollars; two and one-half ton truck, thirty-five ($35.00) dollars; three ton truck, forty ($40.00) dollars; three and one-half ton truck, fifty-five ($55.00) dollars; four ton truck, seventy-five ($75.00) dollars; four and one-half ton truck, one hundred ($100.00) dollars; five ton truck, one hundred ($100.00) dollars; any major fraction over the items provided for herein shall follow in the next higher class, trailers shall pay one-half of the licenses as hereinabove set out for trucks.

"Nothing in this section shall prohibit or interfere with carriers engaged in the transportation of farm or dairy products exclusively, from farm or dairy to market, or shipping point nor in the transportation of the necessary material used in the packing for shipment of orchard or

agricultural products nor to supplies to farmers used and owned by them in their necessary farming operations, nor to trucks hired to the State Highway Department, or to contractors engaged in State highway work, or to the authorities of any county, city or town engaged in the construction or maintenance of roads, streets, et cetera, nor to trucks under contract hauling lumber, or other forest products from mill to shipping point or place of manufacture."

By act approved March 26, 1932 (Acts 1932, chapter 342, page 613), the legislature again codified these laws, and in section 35 of that chapter readopted the schedule of charges provided for in the act of 1926, as amended by the act of 1930, and declared that the schedule so adopted should continue in effect until April 1, 1933, after which material changes become effective.

There can be no doubt whatever about the schedule of 1926, as amended in 1930, being continued to April 1, 1933; but what is termed the exemption clause, which appears as the last paragraph in the statute just copied, is the subject of sharp controversy. The State contends that it is not carried into effect by the act of 1932, and that even if such were the legislative intent it is unconstitutional. For the defendant it is said that it is part of our present statute, that it is not unconstitutional, and that even if it were the State cannot raise that issue.

These are questions we do not reach. The warrant is void upon its face and charges no crime. It tells us that "A. L. Doss did on the 1st day of September, 1932, in said county, operate truck with improper license, violating chapter 342, section 35." Chapter 342, section 35 of what? Of the Code of Virginia? Of the act of 1926, 1930, or 1932? We are left to guess. After reading them and after argument, we find that the act of 1932 is meant. He had an improper license. Did he pay too much for it or too little? Of course we know that the Commonwealth would scarcely have prosecuted him be-

cause he paid too much, but we do not know it from the warrant. Did he fail to pay the basic charge set out in the schedule of the act of 1930, or did he fail to pay the supplemental assessment there levied?

As a matter of fact it is this supplemental assessment which has not been paid. It is to be paid only when "the owner or operator of such vehicle holds himself out for employment," and when he operates "over any highway of the State." It does not appear from the warrant that the defendant ever held himself out for employment, or that he ever operated over any of the highways of the State. Not only are these facts not set out in the warrant but they do not appear in the evidence.

It is perfectly true that the circuit court, under authority of section 4989 of the Code, had authority to amend the warrant, or, if deemed proper, to dismiss it and issue one under the hand of the judge. This was not done and it is the justice's warrant which is now before us for construction.

An indictment for a purely statutory offense should follow the statute. *Duff's Case,* 92 Va. 769, 23 S. E. 643; *Broaddus* v. *Commonwealth,* 126 Va. 733, 101 S. E. 321; *Gilreath* v. *Commonwealth,* 136 Va. 709, 118 S. E. 100. It is not necessary to use its precise language, provided words of similar purport are used; but such substitution is dangerous practice and should be adopted with caution. *Sink* v. *Commonwealth,* 152 Va. 1002, 147 S. E. 231; *Whitlock* v. *Commonwealth,* 89 Va. 337, 15 S. E. 893; *Christian* v. *Commonwealth,* 23 Gratt. (64 Va.) 954; *Taylor* v. *Commonwealth,* 20 Gratt. (61 Va.) 825.

It is also true that warrants are not required to describe the offense with that particularity demanded of indictments, but they still must recite the offense charged. Bishop Crim. Proc., section 714; *Lacey* v. *Palmer,* 93 Va. 159, 24 S. E. 930, 31 L. R. A. 822, 57 Am. St. Rep. 795; *Satterfield's Case,* 105 Va. 867, 52 S. E. 979.

In *Xippas* v. *Commonwealth,* 141 Va. 497, 126 S. E.

207, this court, speaking through Campbell, J., said: "It is unquestionably true that before an accused can be convicted of the violation of a statute, the crime charged must fall within the provisions thereof. It is also true that where no offense is charged in an indictment the appellate court will reverse the judgment of the trial court, set aside the verdict of the jury and award a new trial, even though no motion was made in arrest of judgment. *Rose's Case,* 116 Va. 1027, 82 S. E. 699."

To be guilty Doss must have held himself out for employment. The warrant charges a day's disconnected work. Instead of holding himself out he may have been solicited by the road contractor to aid in some emergency. To hold oneself out connotes a certain continuity of purpose not here charged. *United States* v. *Snow,* 4 Utah 313, 9 Pac. 697; *People* v. *Hubbard,* 313 Ill. 346, 145 N. E. 93. It could not be successfully contended that one who did a day's hauling for a neighbor at his request was necessarily holding himself out for such employment.

Again, the hauling must have been on a highway. This the statute demands, but it is not charged. As a matter of fact it would be possible to haul from a rock quarry to a stone dump convenient to highway work without ever going upon the highway. In such a case this supplemental tax could never be assessed.

For these reasons this defendant should have been acquitted. He was acquitted, and in that judgment there is no error.

The conclusions reached make it entirely unnecessary for us to consider the status of the exemption clause already adverted to. It is said that large interests are involved, and, inferentially, that the constitutionality of these provisions should be determined. Courts do not pass upon the constitutionality of statutes unless they must. *Gale & Eason* v. *Commonwealth,* 115 Va. 958, 80 S. E. 741; *Watkins* v. *Ford,* 123 Va. 268, 96 S. E. 193. And

certainly we do not enter declaratory judgments in criminal cases.

There is no error in the judgment appealed from, and it is affirmed.

*Affirmed.*