## Norfolk
### NEAL BONNEY MARTIN, JR.
v.
### WARDEN, VIRGINIA STATE PENITENTIARY
No. 0498-85

Decided March 4, 1986

COUNSEL

(Michael B. Salasky, on brief), for appellant. Appellant submitting on brief.

(Linwood T. Wells, Assistant Attorney General; William G. Broaddus, Attorney General, on brief), for appellee. Appellee submitting on brief.

OPINION

**BAKER, J.**—Neal Bonney Martin, Jr. (petitioner) appeals from a judgment of the Norfolk Circuit Court (habeas court), which denied and dismissed his petition for a writ of habeas corpus.

The petition alleges that petitioner received constitutionally ineffective assistance of counsel in a 1981 trial before a Norfolk Circuit Court. In that court, he was found guilty on each of five indictments charging that on December 18, 1980, he committed attempted rape, attempted forcible sodomy, statutory burglary,

robbery and abduction with intent to defile. The trial court sentenced petitioner to a total of seventy years imprisonment, with ten years suspended conditioned on certain probationary terms.

At the plenary hearing it was disclosed that at the outset of the 1981 trial, petitioner was asked a series of questions by the trial judge. In summary, petitioner's responses to those questions reveal that under oath he told the court that the nature and elements of the charges against him had been explained to him by his attorney, and that he fully understood them; that his attorney had met with him four times, with each meeting lasting forty-five minutes or more; that he had enough time to explain any possible defenses he might have had to the charges; that he could not give his attorney the names of any witnesses; that he was entirely satisfied with the services of his attorney; that he understood he had a right to a trial by jury or the court; that he had discussed the choice of jury or court trial with his attorney, and after that discussion it was his own wish to be tried by the court without a jury.

Notwithstanding those responses at his criminal trial, the petitioner now contends that he met with trial counsel only twice, and that because of his drunken condition on the night of the alleged offenses, he was unable to supply his attorney with the names of any of the persons who saw him at the several different places he now claims to have visited on that evening.

At the plenary hearing, petitioner's trial attorney testified that he had seven or eight interviews with petitioner, and while petitioner told him of the several places he had visited, he offered no corroboration. Trial counsel added that petitioner had stated to him that petitioner had seen no one he knew during his evening travel except a bootlegger who had sold him some rum, but petitioner refused to name him.

Petitioner alleges constitutionally ineffective assistance at the pretrial, trial and appellate stages.

## I. *THE PRETRIAL STAGE*

Defendant alleges that prior to trial his trial attorney failed:

(1)   to investigate the facts surrounding the charges, thereby precluding consideration of his claimed alibi;

(2) to request a transcript of his preliminary hearing; and
(3) to properly request discoverable material from the Commonwealth.

■ As aforenoted, petitioner knew the name of at least one witness, a bootlegger from whom he had purchased a bottle of rum. He refused to provide trial counsel with that name. Here he complains that counsel was ineffective for failure to investigate. We must view his failure to inform counsel as a failure to cooperate with counsel. While in the criminal trial no inference as to his guilt can be made of the defendant's failure to testify, he ought not now be heard to complain that counsel was inept when petitioner refused to help him by giving him information, which if true, might have caused the jury to believe him if he testified concerning his travels on the night of the offenses. It is not the failure of trial counsel to investigate which might have changed the result, but rather the petitioner's refusal to supply information which might have corroborated an alibi defense.

The testimony of petitioner and trial counsel concerning the events which occurred at the probable cause stage are in sharp conflict. Trial counsel testified that the preliminary hearing was waived: (1) because petitioner wanted to; and (2) because the Commonwealth assured him that he would be shown all discoverable material. While petitioner elaborated on testimony which he says was given at such a hearing, the court reporter for the court in which such hearings were held had no record of any such proceedings in petitioner's case.

The informal discovery process included review of portions of the Commonwealth's file, discussion of the case with the investigating police officer, examination of physical evidence, details of identification procedures, and results of forensic testing. In addition, the prosecutor recited the alleged victim's expected testimony, which included a positive identification of petitioner, and an accurate depiction of his scars, teeth, height and weight. Trial counsel learned that the police did not find petitioner's fingerprints in the victim's home where the crimes occurred, and successfully brought out that fact at trial.

At the beginning of the trial when petitioner responded to the court's questions concerning being satisfied with trial counsel, he

knew all that he now alleges. He has offered no valid reason here as to why he should be permitted to controvert his prior statements at trial and avoid the conclusiveness rule set forth in *Anderson* v. *Warden*, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981). We hold that trial counsel's utilization of informal discovery procedures in this case did not prejudice petitioner's cause.

## II. *THE TRIAL STAGE*

Petitioner next alleges that trial counsel was constitutionally ineffective at the trial stage in that he failed:

(1)  to move to suppress evidence petitioner claims was obtained in violation of the fourth amendment;

(2)  to professionally counsel and make recommendations to him concerning his trial and the presentence hearing; and

(3)  to move to strike two indictments that he asserts failed to charge him with a crime.

### (1) *Search and Seizure Issues*

At the plenary hearing, trial counsel agreed that he did not object to the admission into evidence of items seized at the time of and following petitioner's arrest. He stated that it was a part of his trial strategy to wait until the prosecution had rested, at which time he would (and did) move to suppress all the evidence on the ground that the Norfolk police lacked probable cause to arrest the petitioner on the offense date. Trial counsel had discussed this plan with other defense attorneys prior to trial. The theory was that if sustained at that time, there would be no evidence on which petitioner could be convicted and he would go free. Whether this was effective strategy is not material in this proceeding as trial counsel was permitted to fully argue the suppression motion and was overruled on the basis that there had been probable cause for the arrest. Thus, petitioner fails to prove that the results probably would have changed if objections and the motion to suppress had been made at any earlier time.

## (2) *Trial and Post-Trial Strategy*

Petitioner further told the habeas court that trial counsel advised him against a jury trial, "because [I] might end up with 40 years to life." (clarification added). In addition, the petitioner asserted that trial counsel advised petitioner not to testify at the trial because the alleged victim had identified him and said it wouldn't do any good to put him on the stand and anger the judge by calling the victim a liar. Trial counsel denied making either recommendation. He testified that according to his usual practice he informed petitioner of his rights and alternatives, and their potential consequences, and then left the ultimate decisions to his client. As to the form of trial, counsel said it was petitioner's decision to have a trial by the judge, and to not testify at trial.[1] Trial counsel further testified that during the trial he reminded petitioner that he could testify if he wished, but he refused to do so. Trial counsel denied making the alleged comment that the testimony might anger the trial judge.

Petitioner further testified that trial counsel did not consult with him about his presentence hearing and showed him the presentence report "in the holding cell when he brought it down and told me to read over it." Trial counsel maintained that he discussed the presentence hearing and reviewed the presentence report with petitioner who told counsel that the report contained no errors and that no witnesses existed to speak on his behalf, including character witnesses.

A review of the testimony, including the statements made by petitioner at the time he entered his not guilty pleas, discloses that petitioner made informed decisions to choose a trial before the court and to choose not to testify. It supports a finding that petitioner understood his rights and the consequences of his alternatives in making his choices. It further appears that trial counsel adequately prepared for the presentence hearing. Therefore, we hold that petitioner has failed to prove that he received ineffective assistance in these phases of the 1981 proceedings.

---

[1] As previously noted, at the beginning of the criminal trial, in response to a question from the trial judge, petitioner told the court that it was his decision to waive trial by jury made after discussion with trial counsel.

### (3) *Sufficiency of the Indictments*

Petitioner next complains of two indictments upon which he was tried and convicted and trial counsel's failure to object to their language. The two indictments related to the attempted forcible sodomy and statutory burglary charges:

> The Grand Jury charges that: On or about December 18, 1980, in the City of Norfolk, NEAL BONNEY MARTIN, JR. did by force attempt to carnally know [the alleged victim] *by the mouth.* Va. Code Section 18.2-361; 18.2-10. (emphasis and clarification added).
>
> \* \* \*
>
> The Grand Jury charges that: On or about December 18, 1980, in the City of Norfolk, NEAL BONNEY MARTIN, JR. did enter, in the nighttime, the dwelling house of [the alleged victim], *with intent to defile.* Va. Code Section 18.2-91. (emphasis and clarification added).

With respect to the *attempted forcible sodomy* indictment, petitioner argues that the language "by the mouth" means fellatio, and the Commonwealth's evidence revealed an attempt to commit cunnilingus. Petitioner contends that to properly charge attempted cunnilingus, the indictment language should read "with the mouth." Therefore, petitioner concludes the indictment charges a crime which the evidence shows he did not commit and trial counsel should have made an objection to the indictment.

Trial counsel informed the habeas court that he understood the indictment language to charge attempted cunnilingus, and felt that no defect existed. Furthermore, assuming that he was mistaken, trial counsel stated that to object would have resulted in an amendment of the indictment under Code § 19.2-231.[2]

---

[2] In relevant part, Code § 19.2-231 states:

If there be any defect in form in any indictment, presentment or information, or if there shall appear to be any variance between the allegations therein and the evidence offered in proof thereof, the court may permit amendment of such indictment, presentment or information, at any time before the jury returns a verdict or the court finds the accused guilty or not guilty, provided the amendment does not change the nature or character of the offense charged.

■ We need not decide the issue whether the words "by the mouth" properly means fellatio or cunnilingus. It is sufficient to hold as we do that with respect to the attempted sodomy indictment, such defective language, if any, denoting fellatio instead of cunnilingus was subject to a curative amendment under Code § 19.2-231. Such amendment would not have changed the nature or character of the offense from attempted forcible sodomy. Therefore, trial counsel's failure to object to any defect in the indictment resulted in no prejudice to petitioner.

As to the *statutory burglary* indictment, petitioner argues that the phrase "did enter, in the nighttime, the dwelling house of Sue Box [the alleged victim], with intent to defile" does not state a crime. He then alleges that trial counsel was constitutionally ineffective for failing to move the trial court "to strike" at the conclusion of the Commonwealth's evidence. A review of trial counsel's testimony at the plenary hearing in its entirety discloses that he felt such a motion would have failed in view of Code § 19.2-231. The Commonwealth agrees and argues that both the petitioner and trial counsel were well aware of the offense charged by the indictment. It further asserts that in any event if trial counsel had moved to quash the indictment, the trial court, pursuant to the provisions of Code § 19.2-231, would have permitted the indictment to be amended and, by the addition of the words "with the intent to abduct" inserted between the victim's name and the phrase "with the intent to defile," the statutory requirements would have been met.

■ There is no constitutional requirement in Virginia that prosecutions for felony be by indictment, the indictment requirement being a policy established by legislative enactment. *Bailey* v. *Commonwealth*, 193 Va. 814, 822, 71 S.E.2d 368, 372 (1952). The Supreme Court of Virginia has determined that the policy of the legislature is to try criminal cases on their merits as far as possible, and to ignore mere formal defects. *Livingston* v. *Commonwealth*, 184 Va. 830, 834, 36 S.E.2d 561, 564 (1946). This is demonstrated by the liberal provisions for amendment provided by the statute. *See* Code § 19.2-231. This section allows a court to make changes by way of amendment as it may deem proper to the end that technicalities may be eliminated. *Livingston*, 184 Va. at 835, 36 S.E.2d at 564. Even indictments which are fatally defective may be amended under this provision if such amendment is

made at the proper time. *Id.*

As an example of the liberal amendments permitted by the Supreme Court of Virginia, in *Livingston,* the court cited *Sink* v. *Commonwealth,* 152 Va. 1002, 147 S.E. 131 (1929), saying that in "the *Sink* case the indictment was amended when in its original form it did not embrace the *statutory essential* that the female was of previous chaste character — it being an indictment for *seduction.*" 184 Va. at 838, 36 S.E.2d at 565 (emphasis added).

The record discloses that prior to and at the time of the trial the petitioner and his trial counsel were aware that petitioner was being charged with rape, attempted forcible sodomy, robbery and abduction with intent to defile. They knew that these offenses were alleged to have occurred at the same time and place at which the indictment for statutory burglary with intent to defile was alleged to have occurred. We are certain from our examination of the record that both knew the statutory burglary charge to be that the petitioner entered the premises at a time stated and place clearly delineated for the purpose of committing an unlawful sexual offense against the victim. *See Fitzgerald* v. *Commonwealth,* 223 Va. 615, 632, 292 S.E.2d 798, 808 (1982), *cert. denied,* 459 U.S. 1228 (1983), wherein the words "sexually molest" were held to be interchangeable with the word "defile."

Petitioner relies upon *Taylor* v. *Commonwealth,* 207 Va. 326, 150 S.E.2d 135 (1966) to support his position that trial counsel was ineffective for failing to move to quash the indictment. His reliance is misplaced. *Taylor* stands only for the legal proposition that when the indictment charges only that the defendant did enter "with intent to commit a felony," and the evidence fails to prove the defendant was guilty of a felony, the evidence should be stricken and the defendant acquitted.

Under the facts and circumstances of this case, we hold that trial counsel's conduct in not moving to quash the statutory burglary indictment was not constitutionally ineffective assistance to the petitioner.

### III. *APPELLATE STAGE*

Petitioner's final allegation appears to assert that the cumulative product of trial counsel's alleged failures foreclosed his

right to a meaningful direct appeal. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland* v. *Washington*, 466 U.S. 668, 696 (1984). In examining that conduct, the reviewing Court must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. *Id.* at 689.

In a habeas corpus proceeding which alleges constitutionally ineffective performance of trial counsel, the petitioner must not only prove to the reviewing court that errors in performance alleged were so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment but, in addition, he must show that the deficient performance prejudiced the defense. To meet this requirement, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. Having found no merit in any of the specifically alleged deficiencies, and considering all the facts and circumstances disclosed by this record, we find that the petitioner received a fair trial and the constitutionally required assistance of counsel.

Accordingly, we dismiss the petition and the judgment of the trial court is

*Affirmed.*

Barrow, J., and Hodges, J., concurred.