PRESENT: All the Justices

ELMER MILTEER

v.  Record No. 031558

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE G. STEVEN AGEE
APRIL 23, 2004

FROM THE COURT OF APPEALS OF VIRGINIA

I.  BACKGROUND AND PROCEEDINGS BELOW

On March 28, 2001, Norfolk police officers Steve Stephens ("Stephens") and Maurice S. Joseph ("Joseph") were screening packages for narcotics at a Federal Express facility in Norfolk, Virginia.  While doing so, the officers noticed two packages similar in size, shape and labeling to packages determined through prior investigations to contain unauthorized (commonly referred to as "pirated") compact discs ("CDs") and videocassettes.  The officers opened the packages pursuant to a search warrant and discovered that they did indeed contain CDs and videocassettes.[1]

The packages were addressed to "Guy" at a business address, 407 Pretlow Street, in the City of Franklin, Virginia.  In conjunction with the Franklin police department, Joseph posed as a Federal Express employee and delivered both packages to that address.  During the first attempt to deliver the packages, no

_____

[1] Stephens testified that at least one of the videocassettes was a copy of a movie that opened in theaters the previous weekend.

one at that address would accept the packages and pay the charges due upon delivery. Joseph then made a second delivery attempt and found Elmer Milteer ("Milteer") standing behind a vehicle in the parking lot at 407 Pretlow Street talking on a cellular telephone. Joseph approached Milteer and told him he had a delivery and the charge was $101.40. Milteer accepted the packages without comment or examining the contents, but gave Joseph $102.00 and told him to keep the change.

Stephens and another police officer observed Milteer place the packages in the back of his vehicle and drive away. Stephens followed Milteer's vehicle for several blocks before police officers in a marked police vehicle stopped Milteer. The officers arrested Milteer and searched his vehicle where they recovered the packages Joseph had just delivered to Milteer, but also found separate boxes containing 183 CDs and 72 videocassettes. In addition to the CDs and videocassettes, officers discovered receipts for shipments from New York and a business license from Murfreesboro, North Carolina indicating Milteer was in the business of selling, inter alia, T-shirts and CDs. Officers also recovered a business license from Hertford County, North Carolina and, from Milteer's wallet, a handwritten price list titled "the Underground Wholesale Price List."

After his arrest Milteer told a Franklin police officer that he sold items from the back of his truck in Franklin and in

the area of North Carolina where he lived. Milteer denied knowing it was illegal to sell the CDs and videocassettes for which he was arrested and offered to help the officers apprehend the person from New York who shipped the packages. He also stated that the CDs or videocassettes would be worth $3.00 to $5.00 each if he were to sell them.

Milteer was the subject of four indictments involving: (1) violation of Code § 59.1-41.3 by possession for the purpose of selling videocassettes produced, manufactured, distributed or acquired in violation of Chapter 3.1 of Title 59.1, (2) possession of videocassettes whose labels did not reflect the true names and addresses of their manufacturers, Code § 59.1-41.4, (3) violation of Code § 59.1-41.3 by possession for the purpose of selling CDs produced, manufactured, distributed or acquired in violation of Chapter 3.1 of Title 59.1, and (4) possession of CDs whose labels did not reflect the true names and addresses of their manufacturers, Code § 59.1-41.4. None of the indictments charged a violation of Code § 59.1-41.2 or mentioned that statute. The two indictments which cited Code § 59.1-41.4 made no reference to Code § 59.1-41.3.

At trial the Commonwealth presented testimony from Phillip Brooks ("Brooks"), an official with the Recording Industry Association of America. As an expert on music piracy, Brooks testified that he examined the 113 CDs delivered to Milteer by

3

Joseph and concluded all were counterfeit. He also stated that none of the CDs were labeled with the name and address of the true manufacturer (i.e. the counterfeiter). In addition, Brooks examined the 183 other CDs found in Milteer's vehicle and determined that all but four of those CDs were counterfeit.

The Commonwealth also presented testimony from Robert W. Hunter ("Hunter"), an investigator for the Motion Picture Association of America. Hunter, as an expert in the field of counterfeit videocassettes, testified that he had examined the 90 videocassettes contained in the package Joseph delivered to Milteer and all were counterfeit. Furthermore, the videocassettes were not labeled with the name or address of the true manufacturer. Hunter also testified that another 72 videocassettes found in Milteer's vehicle were also counterfeit and did not contain the true address or name of the manufacturer.

At the close of the Commonwealth's case, Milteer moved to strike the evidence. Although trial counsel's arguments are hard to follow at points, he contended there should only be one charge against Milteer under Code § 59.1-41.3 and Code § 59.1-41.4 because these statutes were not intended to establish two separate offenses: "if you say he's violating .3 then what statute are you looking at? . . . You've got to look at another statute first . . . I don't think if your underlying offense is

4

.4 you can go up and get .3 also". Milteer also asserted that the CDs and videocassettes retrieved from his vehicle should be consolidated for purposes of prosecution instead of permitting the Commonwealth to charge possession of the delivered packages separately from the CDs and videocassettes already in his vehicle.

After hearing the arguments of counsel, the trial court struck two of the indictments so Milteer was tried on one indictment regarding videocassettes under Code § 59.1-41.3 ("the videocassette charge") and the other as to CDs under Code § 59.1-41.4 ("the CD charge"). The trial court then convicted Milteer on both indictments by these conviction orders:

(1) The videocassette charge

Elmer Milteer, Jr did unlawfully and feloniously possess for purpose of selling or renting . . . VHS video cassettes that have been produced, manufacture[d], distributed or acquired in violation of Chapter 3.1 of Title 59.1 of the 1950 Code of Virginia as amended, Virginia Code Section 59.1-41.3 . . . .

(2) The CD charge

Elmer Milteer, Jr did unlawfully and feloniously possess . . . compact disc for the purpose of sale, rental or transfer by any manufacture[r], . . . without having on its packaging the true name and address of the manufacturer, Virginia Code Section 59.1-41.4 . . . .

Upon sentencing for the videocassette charge and the CD charge, Milteer's existing probation for a prior drug conviction was revoked.

On appeal to the Court of Appeals of Virginia, Milteer argued he could not be convicted under both Code § 59.1-41.3 and Code § 59.1-41.4 because conduct under Code § 59.1-41.4 can only be a criminal offense when read in conjunction with Code § 59.1-41.3. The Court of Appeals affirmed both convictions, noting that the acts charged in the indictments could separately violate the proscriptions of Code §§ 59.1-41.2 and 59.1-41.4 and "defendant was culpable pursuant to Code § 59.1-41.3 for both offenses." The opinion did not directly address the issue that Milteer's indictment and conviction order on the CD charge for violating Code § 59.1-41.4 made no reference to Code § 59.1-41.3 or any other statute which directly denominates particular conduct as a crime.

We awarded Milteer this appeal. For the reasons set out below, the judgment of the Court of Appeals will be affirmed in part, reversed in part, and the case remanded.

## II. ANALYSIS

On appeal to this Court Milteer asserts that he could not be convicted of violating Code § 59.1-41.3 and separately violating Code § 59.1-41.4. He also contends the evidence was insufficient to sustain his convictions and, consequently, that

6

it was error to find he violated his probation in effect at the time of his convictions.

A.  Convictions under Code § 59.1-41.3 and Code § 59.1-41.4.

We are mindful that "[p]enal statutes must be 'strictly construed against the State' and . . . 'cannot be extended by implication or construction, or be made to embrace cases which are not within their letter and spirit.' " Commonwealth, Dep't of Motor Vehicles v. Athey, 261 Va. 385, 388, 542 S.E.2d 764, 766 (2001) (quoting Berry v. City of Chesapeake, 209 Va. 525, 526, 165 S.E.2d 291, 292 (1969)).  "It is unquestionably true that before an accused can be convicted of the violation of a statute, the crime charged must fall within the provisions thereof.  It is also true that where no offense is charged in an indictment, the appellate court will reverse the judgment of the trial court." Xippas v. Commonwealth, 141 Va. 497, 501, 126 S.E. 207, 207 (1925); see also Commonwealth v. Doss, 159 Va. 968, 973-74, 167 S.E. 371, 373 (1933); Smith v. Commonwealth, 160 Va. 943, 946, 169 S.E. 550, 551 (1933).

Code § 59.1-41.3 makes it "unlawful for any person to knowingly sell, rent, cause to be sold or rented, or possess for the purpose of selling or renting any recorded device that has been produced, manufactured, distributed, or acquired in violation of any provision of this chapter." Code § 59.1-41.4 mandates that "every recorded device sold, rented or transferred

7

or possessed for the purpose of sale, rental or transfer . . . shall contain on its packaging the true name and address of the manufacturer."[2]

While the possession of recorded devices for sale that do not have the "true name and address of the manufacturer" may be contrary to the provisions of Code § 59.1-41.4, the plain text of Code § 59.1-41.4 contains no provision making such possession a crime. Under the General Assembly's writing of Chapter 3.1 of Title 59.1, it is only through Code § 59.1-41.3 that possession of prohibited recorded devices contrary to the standard of Code § 59.1-41.4 becomes a criminal act. Yet, neither Milteer's indictment nor conviction order for the CD charge under Code § 59.1-41.4 makes any reference to Code § 59.1-41.3, either directly or indirectly, by citation or narrative.

---

[2] The full text of Code § 59.1-41.4 reads as follows:

> Ninety days after July 1, 1972, every *recorded device* sold, rented or transferred or possessed for the purpose of sale, rental or transfer by any manufacturer, distributor, or wholesale or retail merchant shall contain on its packaging the true name and address of the manufacturer. The term "manufacturer" shall not include the manufacturer of the cartridge or casing itself. The term "recorded device" means the tangible medium upon which sounds or images are recorded or otherwise stored, and includes any phonograph record, disc, wire, tape, videocassette, film or other medium now known or later developed on which sounds or images are recorded or otherwise stored.

By contrast, Milteer's indictment and conviction order on the videocassette charge recite that he possessed the videocassettes, which "have been produced, manufactured, distributed or acquired in violation of Chapter 3.1 of Title 59.1 . . . Virginia Code § 59.1-41.3."  By the reference to violation of Chapter 3.1, the videocassette charge could bring within its ambit either or both a violation of Code § 59.1-41.2 for possessing videocassettes of unauthorized recordings or having a mislabeled videocassette as set out in Code § 59.1-41.4.  As the Court of Appeals correctly noted, either act is made a crime by virtue of Code § 59.1-41.3, which makes it unlawful to possess the videocassettes "in violation of any provision of this chapter."

Provided the evidence of guilt is sufficient, possession of the pirated videocassettes as charged against Milteer is a crime under Code § 59.1-41.3.  This is because the videocassette charge was specifically made by reference to a statute which makes the charged conduct a crime:  Code § 59.1-41.3.

However, the indictment and conviction order for the CD charge are markedly different.  The only act for which Milteer was charged and convicted in the CD charge was possessing CDs "without having on its packaging the true name and address of the manufacturer, Virginia Code Section 59.1-41.4."  Neither the indictment nor conviction order states Milteer's act was "in

9

violation of Chapter 3.1 of Title 59.1" as set out in the videocassette charge. Further, there is no direct or indirect reference in the CD charge to Code § 59.1-41.3, which the structure of Chapter 3.1 uses as the vehicle to make an act under § 59.1-41.4 a crime. It is only with the imprimatur of Code § 59.1-41.3 that the General Assembly deems acts under Code § 59.1-41.4 to be criminal acts. The fatal flaw in Milteer's conviction on the CD charge is that it was obtained based on a statute which, by itself, does not criminalize Milteer's actions.

If the Commonwealth had charged and convicted Milteer under Code § 59.1-41.3 on the CD charge by virtue of acts contrary to Code § 59.1-41.4, then Milteer would have been properly convicted of acts that the General Assembly has denominated as a crime. However, the Commonwealth did not do so and ignored the clear statutory requirements of Chapter 3.1, which do not make acts under Code § 59.1-41.4, standing alone, a crime.

Accordingly, the trial court was in error convicting Milteer of the CD charge and should have granted his motion to strike that indictment. The Court of Appeals erred in affirming that conviction. Therefore, the Court of Appeals' judgment affirming Milteer's conviction under Code § 59.1-41.4 on the CD charge will be reversed.

B. Sufficiency of the Evidence.

10

Milteer also asserts that the Commonwealth's evidence was insufficient to show he "knew these tapes delivered to him were not made in compliance with the statutory requirements." In view of our disposition of the CD charge above, we only consider the sufficiency argument with regard to the videocassette charge.

As an initial matter, the Commonwealth contends that Milteer's claim regarding the sufficiency of the evidence was procedurally defaulted in the trial court. The Commonwealth asserts that Milteer only alleged that the evidence failed to prove his intent to sell or distribute the videocassettes, not that he did not know the videocassettes he possessed were illegal reproductions. The Court of Appeals agreed with the Commonwealth and determined that at trial Milteer only argued the Commonwealth's failure to prove he "had the intent to distribute or sell these items." Milteer v. Commonwealth, Rec. No. 0939-02-1, slip op. at 7 (June 3, 2003). We disagree with the Court of Appeals on this point.

The record shows that, in support of his motion to strike, Milteer argued at trial that "[t]he Commonwealth has not proven . . . that my client [acted] knowingly or with the intent to sell or distribute these items." (Emphasis added). This argument, based on the alternate grounds of both "knowledge" and "intent," is sufficient to preserve the issue for appeal.

11

Having determined Milteer's sufficiency claim is not procedurally defaulted, we address the merits.

"Applying well-established principles of appellate review, we will consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party below." Dowden v. Commonwealth, 260 Va. 459, 461, 536 S.E.2d 437, 438 (2000).

The evidence presented at trial proved that Milteer accepted, paid for, and transported two packages known by police officers to contain pirated CDs and videocassettes. When the police stopped Milteer they discovered, in addition to the delivered packages, an additional 183 CDs and 72 videocassettes, all but four of which were pirated and mislabeled. Milteer had a price list in his wallet titled "the Underground Wholesale Price List."

At trial, Franklin police officer Richard Harvey ("Harvey") testified that he had previously seen Milteer selling CDs, clothing and jewelry from the back of his truck in the City of Franklin. After his arrest, Milteer admitted to Harvey that he sold items from the back of his truck throughout Franklin and the area of North Carolina where he lived. Milteer admitted, and the "underground" price list found in his wallet reflected, that the CDs and videocassettes would sell for between $3.00 and $5.00 – prices significantly lower than those at retail stores.

12

The evidence also showed that some of the videocassettes in Milteer's possession were copies of a movie that had opened in theaters the weekend prior to his arrest.  The trial court could reasonably infer that these videocassettes were therefore unavailable for purchase at a retail store and therefore unavailable for sale to the public.

In sum, there was more than sufficient evidence to prove that Milteer knowingly possessed illegal reproduction videocassettes for sale.  The trial court did not err in finding the evidence sufficient to convict Milteer of the videocassette charge.

### C.   Probation Revocation.

The trial court sentenced Milteer to two years in prison with one year and six months suspended for each of the two convictions.  At the time he committed the instant offenses Milteer was on probation with a fifteen year suspended sentence for sale of cocaine.  Upon conviction for the CD and videocassette charges, the trial court revoked the suspended sentence and then re-suspended twelve years.  Milteer thus received three years to serve on the prior offense after serving the new six-month sentences.

Milteer argues on appeal that revocation of his probation by the trial court should be reversed if his convictions on the instant charges are reversed by this Court.  Although we have

13

determined that his conviction under Code § 59.1-41.4 for the CD charge was improper, his conviction under Code § 59.1-41.3 on the videocassette charge will be affirmed. However, since it cannot be determined from the record the extent to which the trial court's judgment revoking Milteer's probation and previously suspended sentence was based upon the conviction for the CD charge, we must reverse the probation revocation judgment and remand to the trial court for consideration in view of our opinion in this case.

### III.  CONCLUSION

Code § 59.1-41.4, by its plain language, contains no provision criminalizing the failure to abide by its labeling requirements. Acts in contravention of that statute are only made criminal under the present version of the Code when an offense is charged through Code § 59.1-41.3. Since Milteer was charged and convicted on the CD charge solely under Code § 59.1-41.4, we will reverse his conviction on the CD charge and dismiss the indictment. We also find the evidence sufficient that Milteer knowingly possessed illegally reproduced videocassettes for sale in violation of Code § 59.1-41.3 and we will affirm his conviction on the videocassette charge. Finally, in view of our reversal of the CD charge, we will reverse the trial court's judgment revoking Milteer's probation

14

and remand the case for a new proceeding on the probation revocation if the Commonwealth be so advised.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>